**EASTMAN et al.**

**v.**

**UNITED STATES.**

**No. 13953.**

United States Court of Appeals Ninth Circuit.

April 19, 1954.

Paul H. Primock, Phoenix, Ariz., for appellants.

Jack D. Hayes, U. S. Atty., Everett L. Gordon, James E. Hunter, Asst. U. S. Attys., Phoenix, Ariz., for appellee.

Before HEALY and ORR, Circuit Judges, and LEMMON, District Judge.

ORR, Circuit Judge.

Appellants were convicted of unlawfully importing into the United States, and knowingly concealing and facilitating the transportation of 193 ounces of opium in violation of 21 U.S.C.A. § 174. On this appeal they complain that:

1. The Court erred in giving an instruction which failed to limit the scope of the consideration by the jury of evidence pertaining to a transfer of one-half ounce of opium from appellant Grimsley to government agent Van Natter. The instruction given is appended as note 1.[1]

2. Error was committed in the refusal of the Court to give a requested instruction.[2]

3. The Court erred in its refusal to admit in evidence written and oral statements alleged to have been made by one Richard A. Harding.

We will consider the specifications of error in the order outlined, but first it seems advisable to summarize some of the evidence in the case so that the charged errors may be viewed in their proper relation to the case as a whole.

On June 25, 1952, narcotics agent Charles Van Natter met appellant Grimsley at the Triple X Bar in Casa Grande, Arizona. Also present were Patrick Whelan, a paid government informer, and Richard A. Harding, whom defendants contend was also a government agent. The sale of narcotics was discussed and Grimsley told Van Natter that he had a sample of opium in his motel room. Grimsley and Van Natter left the bar and proceeded to Grimsley's motel. Grimsley gave Van Natter a small box containing approximately one-half ounce of opium as a sample of a large amount of opium which Grimsley was attempting to sell. At the trial this sample was introduced into evidence as Government's Exhibit 1. After delivery of the sample the two men drove to Eloy, Arizona, in Grimsley's automobile where they met appellant Eastman. Eastman informed Van Natter that he had twelve pounds of opium to sell and wanted to know how much Van Natter would pay for it. Van Natter replied that he could not pay more than $1,000 a pound. Eastman replied that it would be necessary for him to consult certain friends before effecting the transfer. Eastman then left but returned about an hour later and a deal was made whereby ten pounds of opium was to be sold for the sum of $11,000. Consummation of the sale was to be had at a meeting the following morning, June 26, 1952. Pursuant to the agreement, Van Natter and Harding met Eastman at a bar in Coolidge, Arizona. Eastman there told Van Natter that he had the opium in his car up the road and was ready to make the transfer. Van Natter replied that he would take delivery of the opium at a motel room he had rented and gave Eastman a key to the motel. Shortly thereafter Grimsley, having received the key from Eastman, entered the motel room and placed the key on a table. Grimsley stated that they had approximately twelve pounds of opium and that Van Natter could pay for the extra two pounds at a later date. Harding, being present at the time, was asked by Grimsley to accompany him to get the opium. Approximately thirty minutes later Grimsley returned to the motel followed shortly thereafter by

1. "The only purpose for which you are entitled to consider Exhibit 1, the small sample, is solely and only to the extent that it may help you determine the guilt or innocence of the defendant Grimsley on Counts 4 and 5, and there is no issue about its being before you for any other purpose, and you are not to consider it for any other purpose."

2. "You are advised that it is never per-

missible for the Government through its officers or agents to initiate the criminal act, nor to entice or induce a defendant to commit a crime, when without such enticement or inducement the defendant would not have committed such crime. A defendant can not be convicted of a crime which was provoked or induced by a government agent or officer and which would not otherwise have been committed."

Harding and Eastman, the latter carrying a burlap bag containing twelve pounds of opium. Delivery of the sack and contents was made to Van Natter and arrests followed.

The error urged to the instruction (see note 1) dealing with the consideration which the jury should give to the evidence concerning the one-half ounce of opium is limited to defendant Grimsley. The Court so admitted it and cautioned the jury to so consider it.

The one-half ounce of opium was admitted in evidence without objection. Appellant Grimsley asserts that notwithstanding this failure to object, the Court, by proper instruction, should have informed the jury that the only purpose for which it could be considered was on the question of intent, scienter, scheme or plan. There was a complete failure here to comply with the requirements of Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. No objection at all was made to the instruction, nor did appellant request an instruction containing the limitation which he now complains was necessary. We have recently had occasion to deal with the result of a failure to comply with Rule 30. Kobey v. United States, 9 Cir., 1953, 208 F.2d 583; Benatar v. United States, 9 Cir., 1954, 209 F.2d 734. Here, as in each of the cases cited, it is urged that we should overlook the failure to comply with Rule 30 and resort to 52(b) and notice plain error. There is no plain error present.

■ The acts and circumstances relating to the transfer of the sample of opium was a relevant link in the proof of the sale of the 193 ounces of opium with which appellant Grimsley was charged. It was one of the acts intended to induce the sale of the larger amount and is in no way comparable to instances where evidence of separate and wholly unrelated crimes are admitted limited to the question of intent, guilty knowledge, scheme or plan. The transfer of the one-half ounce of opium may be said to be a part of the res gestae and evidence thereof was admissible and the jury was privileged to give it such weight and credit as it saw fit in determining the guilt or innocence of appellant Grimsley. The challenged instruction so informed the jury. It was a correct instruction. See Gianotos v. United States, 9 Cir., 1939, 104 F.2d 929.

■ Assignment of error No. 2 deals with the refusal of the Court to instruct on entrapment. Appellants, to say the least, take a very inconsistent position in this respect. Appellants have maintained throughout that they did not commit a crime. It logically follows that absent the commission of a crime there can be no entrapment. Bakotich v. United States, 9 Cir., 1925, 4 F.2d 386. The trial court understood this situation and very properly refused to inject into the case a question which could have no other result than to confuse.

■ Richard Harding, a witness called by appellants, refused to testify on the ground that his answers might incriminate him. Appellants then offered in evidence a letter purporting to have been written by Harding stating that government agents compelled him to frame appellants. Appellants also offered to prove by two witnesses that Harding told them that Grimsley had been framed. The trial court rejected this evidence on the ground that it was hearsay. This ruling was clearly correct.

■ Appellants seek to avoid the impact of the hearsay rule by contending that Harding was a government agent and therefore his extrajudicial statements were binding on the Government. The facts do not justify this conclusion. To render admissible the extrajudicial statements of an alleged agent it must be established that he was the agent of the party to be charged with the admission, that he was acting within the scope of his authority, and that the statements were made before the termination of the agency. F. W. Martin & Co. v. Cobb, 8 Cir., 1940, 110 F.2d 159; Lyons Milling Co. v. Goffe & Carkener, 10 Cir., 1931, 46 F.2d 241, 83 A.L.R. 501; Gratz v. McKee, 8 Cir., 1926, 9 F.2d 593, certiorari denied 270 U.S. 664, 46 S.Ct. 472, 70 L.Ed. 788. If it

could be said, which we doubt, that Harding was at one time an agent of the Government,[3] it clearly appears that the relationship had terminated before the claimed admissions were made.

Judgment affirmed.

3. On this point the record discloses the following facts: Harding was arrested for violating the federal narcotics laws some five weeks before the events giving rise to the instant prosecution. Harding himself was under indictment as a narcotic violator at the time of appellants' trial. Agent Van Natter testified that Harding voluntarily agreed to help the Government in its efforts to apprehend other narcotic violators. He received no pay from the Government. Van Natter loaned Harding $30.00 out of his own personal funds. Van Natter was not shown to have authority to employ Harding as a government agent or that he did in fact enlist Harding's aid as his agent.