**Caesar BROWN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15845.**

United States Court of Appeals
Ninth Circuit.

Nov. 26, 1958.

Robert G. Clostermann, Adelbert G. Clostermann, Portland, Or., for appellant.

C. E. Luckey, U. S. Atty., Robert R. Carney, George E. Juba, Asst. U. S. Attys., Portland, Or., for appellee.

Before STEPHENS, Chief Judge, DENMAN, Serior Circuit Judge, and POPE, Circuit Judge.

DENMAN, Senior Circuit Judge.

Caesar Brown, hereafter appellant, appeals from his conviction by the United States District Court for the District of Oregon, sitting without a jury, for selling heroin in violation of 26 U.S.C. §§ 4704(a), 4705(a) and 21 U.S.C.A. § 174. He urges on this appeal that the evidence was insufficient to sustain his conviction and that the government deliberately suppressed certain testimony which would have revealed that he was entrapped.

Appellant was indicted on three counts of violating the federal narcotics laws, all of which counts relate to a single transaction. Appellant pleaded not guilty and waived a jury trial.

At trial, the government's case rested on the testimony of Wolski, a federal narcotics agent. Wolski testified that several days prior to May 23, 1957, he and Clarence Henry Jackson rented rooms 208 and 209 of the Milton Hotel in Portland, Oregon. Clarence Henry Jackson, a user of narcotics, was a "special employee" apparently paid for his services by the Portland Police Department. At approximately 11:00 P.M. on the evening of May 23, 1957, Jackson left room 208, conversed on a street corner with the appellant, and returned at about 11:40. Wolski then entered room 208 through a door connecting it with 209, searched Jackson and the room, and returned to 209, leaving two five-dollar bills on a table in room 208. Through three small holes drilled by Wolski in the connecting door, he was able to observe most of room 208, including the outer door and the table on which the bills lay. At about 12:15, on the morning of May 24, 1957, the appellant entered room 208. According to Wolski, he "opened his right hand in which he was carrying two white capsules wrapped with a clear cellophane paper. He walked over to the table, laid down the two capsules, and in turn picked up the two five-dollar bills * * *"

At appellant's suggestion, Jackson prepared a solution from some powder in one of the capsules and injected it into his arm. Appellant remained in the room about ten minutes.

Immediately after his departure Wolski entered room 208 through the adjoining door and took possession of the capsules. On analysis, they proved to contain heroin. Wolski testified further that he had known the appellant for one year and conversed with him about three times and that he had no doubt as to his identity on the morning of May 24.

Clarence Henry Jackson, the "special employee", was, prior to trial, incarcerated in a Canadian prison near Vancouver, Canada. On October 1, 1957, the date of trial, he was released to a United States Marshal in Washington at the request of government counsel. At trial, the government stated that Jackson could be obtained as a witness but that to do so would necessitate some delay and that since his testimony would be merely corroborative, it did not intend to call him. Appellant neither objected to this nor made any request that Jackson be called.

The only evidence offered by appellant which tended to refute the testimony of Wolski was appellant's statement that he was home with his girl friend, Bessie Ford, on Thursday night, May 23–24. However, Bessie Ford and her father testified on behalf of appellant, and each stated merely that he was home on Friday night, May 24–25, twenty-four hours after the alleged sale.

The lower court chose to disbelieve the testimony of appellant and to believe Wolski. Appellant was found guilty on all three counts. While there seems little more to be said about the case, counsel for appellant purports to have discovered the several grounds for reversal discussed below.

*Sufficiency of Evidence to Support the Conviction.*

 Wolski testified that appellant set two capsules of heroin on a table from which he picked up $10.00. Appellant offered no evidence at trial nor does

he now suggest any hypothesis which would indicate that this transaction was something other than a sale. Appellant attempted at trial to discredit the eyewitness by suggesting that the holes through which he watched the transaction were too small for adequate identification. However, the lower court determined that proper identification was accomplished and that determination, supported by the testimony of Wolski, was not clearly erroneous.

The "clearly erroneous" rule also answers the rest of appellant's challenges on appeal to the evidence below: (1) That Wolski's five-minute search of room 208 was inadequate; (2) That appellant could not have been in the hotel on the night of the 23rd because the manager and his wife, neither of whom was shown to have been working that night, did not see him; (3) That the cellophane in which the capsules had been wrapped was never recovered.

*Government Suppression of Clarence Henry Jackson's Testimony.*

■ Appellant claims that he was denied due process at trial because the government deliberately suppressed the testimony of Jackson which, if made available, would have afforded appellant the defense of entrapment. Appellant made no objection below to the government's failure to produce Jackson on behalf of its case-in-chief, nor did he indicate any desire to have Jackson made available as a defense witness. The following statement from Deaver v. United States, 1946, 81 U.S.App.D.C. 148, 155 F.2d 740, 744, cited by appellee, answers appellant's contention:

"We know of no rule which holds it error for the government to fail to put on the stand a witness, not deemed necessary to its case, who might conceivably have given testimony favorable to the defendant. It is for the defendant to make his own defense."

■ There is an additional reason why appellant's "suppression" argument lacks merit. Appellant took the position at trial that he was at home on the night of the alleged sale and that he had not sold narcotics since 1953. He could not thereafter have properly raised the defense of entrapment even had Jackson's testimony provided some basis for the defense. As we said in Eastman v. United States, 9 Cir., 212 F.2d 320, 322:

"[2] Assignment of error No. 2 deals with the refusal of the Court to instruct on entrapment. Appellants, to say the least, take a very inconsistent position in this repect. Appellants have maintained throughout that they did not commit a crime. It logically follows that absent the commission of a crime there can be no entrapment. Bakotich v. United States, 9 Cir., 1925, 4 F.2d 386. The trial court understood this situation and very properly refused to inject into the case a question which could have no other result than to confuse."

The judgment is affirmed.