Charles G. RHODES, Appellant,

v.

UNITED STATES of America, Appellee.

No. 8043.

United States Court of Appeals
Fourth Circuit.

Argued May 26, 1960.

Decided Aug. 11, 1960.

Arthur T. Ciccarello and Samuel D. Lopinsky, Charleston, W. Va., for appellant.

Duncan W. Daugherty, U. S. Atty., Huntington, W. Va. (Ned O. Heinish, Asst. U. S. Atty., Huntington, W. Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and JOHN PAUL and THOMPSON,* District Judges.

SOBELOFF, Chief Judge.

Charles G. Rhodes, a real estate operator, was convicted of knowingly filing false statements and reports with the Huntington Federal Savings and Loan Association, in order to obtain a $20,000 loan.[1] The false statements of which he was accused consisted of a deed of trust and note given as security for the loan, and purportedly signed by Rhodes' clients, Glenn C. Dowell and Norma L. Dowell, his wife. Rhodes made it appear on the deed of trust that he took the acknowledgment thereto of the Dowell's signatures. Actually, according to the testimony, Rhodes himself signed Mr. Dowell's name and caused a woman clerk to sign the name of Mrs. Dowell to each of these instruments. The check of the Building Association covering the proceeds of the loan was likewise endorsed by Rhodes and the clerk in the names of the Dowells. It was cleared through Rhodes' bank account and he appropriated the proceeds.

The defendant interposed two defenses. The first, which the defendant does not make a basis of this appeal, was that a long time before the alleged forgery the Dowells had executed to him a power of attorney to collect rents, make repairs and disbursements, and obtain loans on the property. No such instrument was produced; Rhodes claimed it had been lost in moving. In negotiating the loan he did not purport to act under any power of attorney. The Dowells denied executing such a paper.

The second defense was that the defendant was "mentally incapable of *knowing* that he was perpetrating any fraud or doing anything improper." The present appeal rests chiefly upon the claimed error of the District Court in excluding the testimony of a psychiatrist offered in support of this defense.

While it is true that the defense of insanity was not advanced it was still open to the defendant to introduce psychiatric testimony to show that by reason of his mental condition he was unable to form the requisite intent or *mens rea* which is an essential element of the crime charged.[2] An intent beyond the mere doing of the act is not invariably required. Where, however, it is inherent in the offense, or the statute creating it prescribes as part of the definition that a specific state of mind shall accompany the act, as this statute does, a full exposition of the pertinent evidence is permitted if properly tendered.

Long ago this was treated as established doctrine in Hopt v. People, 1881, 104 U.S. 631, 26 L.Ed. 873, where it was held appropriate to show the absence of a requisite mental state, whether due to drunkenness or *otherwise*. Psychiatric testimony, if it has a bearing upon this issue, has a rightful place in the

---

* Judge ROBY C. THOMPSON, who concurred in this opinion, died before filing and announcement.

1. The indictment charged a violation of Title 18 U.S.C.A. § 1014, which is as follows:

   "Whoever *knowingly* makes any false statement or report, or wilfully overvalues any land, property or security, for the purpose of influencing in any way the action of the Reconstruction Finance Corporation * * * any Federal Intermediate Credit Bank * * *." (Emphasis supplied.)

   It is conceded that the defrauded institution falls within the protection of the statute.

2. See Morissette v. United States, 1952, 342 U.S. 246, 264–265, 72 S.Ct. 240, 96 L.Ed. 288; particularly Note 8, page 251.

record.[3] The American Law Institute's Model Penal Code formulates the rule as follows:

"Evidence that the defendant suffered from a mental disease or defect shall be admissible whenever it is relevant to prove that the defendant did or did not have a state of mind which is an element of the offense." § 4.02(1) Tentative Draft No. 4 (1955).[4]

The purpose of such testimony is to enlarge the vision and understanding of the triers of fact. It does not take the decision out of the hands of the jury, but allows those with specialized knowledge to enlighten the jury and enable it to perform its function intelligently. Rhodes v. United States, 4 Cir., 1960, 275 F.2d 78 and cases there cited. In Frankfeld v. United States, 4 Cir., 1952, 198 F.2d 679, Judge Parker made it clear that the ancient objection, that expert testimony must not relate to a matter which is for the decision of the jury, has been thoroughly exploded. Modern courts admit pertinent opinion testimony of experts within the area of their special competency.

The psychiatrist's testimony in this case was not made the subject of a general proffer, but was vouched in the absence of the jury by permitting the psychiatrist, Dr. Thelma V. Owen, to take the stand, and a series of questions was addressed to her by defendant's counsel. At the conclusion of the interrogation the court sustained the prosecutor's objection. Thus the court had before it, and we have before us, the precise testimony which the defense desired to adduce. There was and there is, therefore, no need to speculate as to the character and scope of the testimony that was excluded from the jury's consideration by the court's ruling.

After establishing the witness' professional qualifications, which are not challenged, defendant's trial counsel[5] conducted the following examination:

"Q. Now I will ask you, Doctor Owen, based on your psychiatric examination and study of Charles Rhodes, in your opinion did Charles Rhodes knowingly make a false statement when he signed the name of Glenn C. Dowell and caused the name of Norma L. Dowell to be made to a deed of trust and note and delivered them to the Huntington Federal Savings and Loan Association on December 31, 1954?

"Mr. Daugherty: Now, Your Honor, please, I object.

"The Court: The witness may answer for the record. I will rule on it later.

"The Witness: It is my opinion that he did not.

"By Mr. Greene: Q. That he did not knowingly make—

"Q. Based upon your psychiatric examination and study of Charles Rhodes, in your opinion did he knowingly forge the name of Glenn C. Dowell and knowingly cause the name of Norma L. Dowell to be forged to the said note and deed of trust? A. In my opinion he did not."

There was no further elaboration. There was no attempt to point out that in Dr. Owen's opinion—if such was her opinion—the defendant, by reason of a delusion as to the existence of a power of

---

3. Rhodes v. United States, 4 Cir., 1960, 275 F.2d 78; People v. Wells, 1949, 33 Cal.2d 330, 202 P.2d 53; United States v. Higgins, 4 USCMA 143, 148, 15 CMR 143, 148 (1954).

4. See also draftsman's comment appended to § 4.02(1) Model Penal Code, page 193. "If states of mind *such as* deliberation are accorded legal significance, psychiatric evidence should be admissible when relevant to prove or disprove their existence to the same extent as any other relevant evidence." (Emphasis supplied.) This language indicates no restriction to particular offenses or mental states, and logically would apply whenever a specific state of mind is made an ingredient of the crime charged.

5. The attorneys who argued this appeal did not participate in the trial in the District Court.

attorney, or by reason of other mental disorder, was unable to *knowingly* make a false statement. Not only was nothing of the kind shown, but the testimony is completely consistent with the idea that Dr. Owen credited the defendant's assertion that he had a power of attorney authorizing him to sign the names of Glen C. Dowell and his wife. It is to be remembered that possession of such written authority was claimed by the defendant not only in the trial below but in this court, and he doubtless made the same representation to the examining psychiatrist. It is not farfetched, fanciful speculation that the proffered testimony took this claimed power of attorney into account as a fact. It is notable that the witness was asked, "Did Rhodes knowingly make a false statement," not was he mentally *capable* of doing so. The latter inquiry, which would have been relevant, was omitted; the former was not properly addressed to this witness. Of the truth of the existence of a power of attorney Dr. Owen, of course, knew no more than the jury, and was entitled to express no professional opinion.

■■ The answer, it should be made clear, is not objectionable as conclusory for an expert may state his conclusions drawn from findings which he is able to make within the area of his special knowledge. Rather, the infirmity of Dr. Owen's answer is that it in no way appears to relate to such area, but expresses an opinion in terms fully applicable to the issue of fact of a non-medical character then in dispute before the jury. No opinion as to mental capacity or impairment was sought or elicited. Merely showing a witness' qualifications to express an opinion as to mental disorder is not equivalent to testimony of mental disorder. The proper way would have been to ask the witness to describe the defendant's mental condition and symptoms, his pathological beliefs and motivations, if he was thus afflicted, and to explain how these influenced or could have influenced his behavior, particularly his mental capacity *knowingly* to make the false statement

charged, or *knowingly* to forge the signatures of the Dowells. Not a word along this line is to be found in the record.

■ We fully agree with the earnest contention of appellant's counsel, that the rules of evidence should not be applied in such a way as to interpose unnecessary barriers to communication between lawyers and physicians who appear as witnesses. However, the defense, if it had anything to communicate, failed not on account of barriers put in its path, but because of its own default on this issue. The court did not exclude psychiatric testimony. Actually, none was offered, although the witness was a psychiatrist.

The remaining contentions of the defendant may be disposed of briefly. It is objected that intervention by the presiding judge in the examination of witnesses exhibited a partiality on his part. We are satisfied from the record that there in no basis for this complaint. Such questions as the Judge addressed to witnesses were calculated to clarify their testimony. They did not exceed reasonable limits and were not weighted against the defendant.

■ Nor do we find error in the Judge's additional instruction given after the jury had deliberated for several hours. He instructed them substantially in accordance with Allen v. United States, 1896, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528. We take occasion to repeat what we recently said in Orthopedic Equipment Co., Incorporated v. Eutsler, 4 Cir., 1960, 276 F.2d 455, 463:

> "It is proper for the judge to admonish jurors who are in disagreement to re-examine their opinions in light of the contrary opinions of their fellows, provided it is made equally clear that the jury's verdict must represent the final judgment of each juror, and not merely his acquiescence in a majority view of which he remains conscientiously unconvinced."

That was a civil case. Even more imperative is it in a criminal prosecution

to insist that each juror must be conscientiously convinced of guilt, and that if after giving deferential consideration to the opinions of his fellow jurors, he remains unconvinced, he should not join in a verdict merely because he finds himself in minority. The verdict must be the unanimous judgment of twelve jurors. We do not find, however, that in this case the Judge failed to make this clear.

Affirmed.

JOHN PAUL, District Judge.

I concur in the result.