**Tony CHISUM, Jr., Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 22978.**

United States Court of Appeals
Ninth Circuit.

Jan. 14, 1970.

Luke McKissack (argued), of Mc-Kissack & Saltzman, Hollywood, Cal., for appellant.

Alan H. Friedman (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, KOELSCH and KILKENNY, Circuit Judges.

KOELSCH, Circuit Judge.

Tony Chisum, Jr. appeals from his conviction on all ten counts of an indictment charging him with violations of the narcotics and tax laws. (21 U.S.C. § 174 and 26 U.S.C. §§ 4705(a)).

His principal contentions are that he was denied a speedy trial guaranteed by the Sixth Amendment to the Constitution and a fair trial afforded by the due process clause of the Fifth.

The charges were rested upon a series of four separate transactions in each of which Chisum supplied heroin to an undercover narcotics agent. The first transaction took place on May 11, and the last on May 26, 1966. Chisum was indicted on January 11, 1967 and tried the following September.

We reject Chisum's Sixth Amendment contention. The burden was upon Chisum not only to assert the right in the trial court but to offer at least a plausible claim of prejudice or oppression by virtue of the delay. United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L. Ed.2d 627 (1966). He did, on two occasions prior to trial, move to dismiss the action. However, in support of these motions, he did not assert or suggest that the defense might be impaired because of a dimming of his memory or an inability to secure witnesses or an unduly long incarceration; neither did he urge any circumstances tending to indicate an evil purpose on the part of the prosecution.[1] Rather, he relied, so far as the record reveals, solely on the fact that several months had passed since the indictment without a trial being held.

We are aware that prejudice may be presumed if the accused is not brought to trial within a reasonable length of time after being charged with a criminal offense. But we do not regard an interval of six months, standing alone, as so unreasonable as to require dismissal of the charge.[2] See Ewell v. United States, *supra*. Moreover, Chisum was responsible for four trial postponements. The docket sheet reveals that the case was set for trial eight times; that three of the settings were vacated on Chisum's motion and the fourth because of illness of his counsel; in addition, it appears that on April 19, 1967, he formally waived a speedy trial.

Chisum's denial of due process contention is rested upon the failure of the government to make available the in-

---

1. Chisum's lawyer stated in a supporting affidavit that " * * * the only time the defendant was arrested was on or about November 18, 1967, and he was freed soon after."

2. The record is not clear as to when Chisum's Sixth Amendment right accrued. Before the trial court Chisum asserted the indictment marked the starting point, (January 11, 1967). On appeal he assumes it arose on the date of the offense and urges that the period commenced in May 1966. In other words, in his computation he now includes whatever time elapsed between the date of offenses and the date of the formal charge (as well as the period after the motion was made and prior to trial). However, as this court pointed out in Benson v. United States, 402 F.2d 576 (9th Cir. 1968), the Sixth Amendment right "does not arise until a formal complaint is lodged against the defendant." Thus, his present calculation is inaccurate. Just how inaccurate we cannot determine, because the record does not indicate how the prosecution was initiated, whether by a complaint before a magistrate or by the indictment, and if the former, the date it was made. But even if we accept Chisum's figure of 16 months, our conclusion would nevertheless remain the same under the facts of this case.

former who introduced the undercover agent to the defendant.[3] When cross-examining a government witness, defendant first learned that the informer had disappeared. He did not then, or during the further proceedings in the district court, move to dismiss the action but he did make it clear that he would have called the informer as a witness.[4]

In the recent case of United States v. Walton, 411 F.2d 283 (9th Cir. 1969), this court explained that the question of fair trial in missing witness situations is "cast" by the fact that the absentee is a government informant coupled with a delay in making an arrest, and that the "controlling consideration" is "whether there is a reasonable possibility that, if (the absentee) had been available to testify, defendant would not have been convicted." We are satisfied that here the answer is "no."

Chisum states in brief that the offer of proof made in the trial court shows "how he hoped to utilize the testimony of the informant, Craig Lasha." The offer, although somewhat vague, indicates that the informant might have given evidence tending to prove an entrapment. However, Chisum did not concede that he had committed the alleged acts and endeavor to prove that he was not predisposed to commit them but that he had done so only because persuaded by the government's agents. To the contrary, he denied any dealings in heroin and testified that none of the alleged transactions in fact occurred.

▇▇ In this circuit the rule is settled that an accused may not assert entrapment unless he admits the commission of the acts constituting the crime. Ortega v. United States, 348 F.2d 874 (9th Cir. 1965). The rule, based upon principles of consistency of defenses, applies to the introduction of evidence and thus would have precluded the informer's supposed testimony. Brown v. United States, 261 F.2d 848 (9th Cir. 1958).

▇▇ We have carefully examined Chisum's remaining points but conclude none is valid or warrants extended discussion.[5]

The judgment is affirmed.

---

3. The record makes clear that the government was not culpable for the disappearance of the informer.

4. Immediately upon being told that the informer could not be called, defendant advised the district court:
"I might say, your honor, that kind of leaves us high and dry in attempting to subpoena said witness when we cannot find his address."

5. These contentions are:
(a) That the provision in 21 U.S.C. § 174, making proof of possession of a narcotic drug sufficient evidence to authorize conviction "unless the defendant explains the possession to the satisfaction of the jury" forces a defendant to waive his Constitutional right to a jury trial in order to avoid the impact of the inference.
Chisum's conclusion rests upon the faulty premise that the provision applies solely to jury trials. Recently this court, in McClain v. United States (No. 23335, 9th Cir. 9/18/69), considered the same contention and held the provision "applicable equally to court trials and jury trials * * *."

(b) That the inference provision in 21 U.S.C. § 174 (referred to in subdivision (a)) is irrational and its application denied Chisum due process of law.
Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925) is to the contrary. We have been persistently importuned since the Court's decision in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), to disregard Yee Hem; but we of course have consistently declined the invitation:
"Appellant first urges that Leary * * * is controlling. We hold it is not by the express terms. * * * Thus Yee Hem v. United States * * * still controls." Clayton v. United States, 413 F.2d 297 (9th Cir. 1969).
"Until (and unless) the Supreme Court holds otherwise, we shall adhere to the prior decisions of this court which have held the presumption concerning knowledge of illegal importation of narcotic drugs contained in § 174 is constitutional." Jordan v. United States, 416 F.2d 338 (9th Cir. 1969).
"In our view Leary v. United States, 395 U.S. 6 [89 S.Ct. 1532, 23 L.Ed.2d

57] (1969), a marihuana case, * * * is here of no importance. By express language, it excluded heroin from its impact. Consequently, Yee Hem v. United States, 268 U.S. 178 [45 S.Ct. 470, 69 L.Ed. 904] (1925), must guide our action on the § 174 counts." Gonzalez Ramirez v. United States, 419 F.2d 1330, Nov. 21, 1969, 9th Cir.).

(c) That the provision of 21 U.S.C. § 174 forces an accused to testify and constitutes in effect a comment upon his failure if he does not.

Such a contention was authoritatively rejected by Yee Hem, supra, 268 U.S. at p. 185, 45 S.Ct. 470. See also United States v. Gainey, 380 U.S. 63, 70, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965).

(d) That the indictment as to Counts 1, 2, 3, 5, 6, 8 and 9 was fatally defective because it simply charged in the language of section 174 that the narcotics were imported "contrary to law" without specifying the law or laws.

This circuit has repeatedly rejected such a contention:

Wong Lung Sing v. United States, 3 F.2d 780 (9th Cir. 1925); Pon Wing Quong v. United States, 111 F.2d 751 (9th Cir. 1940); Tenorio v. United States, 390 F.2d 96 (9th Cir. 1968).

(e) That 21 U.S.C. § 174 requires an accused to incriminate himself because to constitute the importation legal and hence not "contrary to law" he must declare the drug at the border and thus risk prosecution by the state where entry is made.

Chisum's proposition suggests only " * * * 'imaginary and insubstantial' hazards of incrimination, rather than the 'real and appreciable' risks needed to support Fifth Amendment Claim." Minor v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (Dec. 8, 1969).

His argument assumes, erroneously, that narcotic drugs can be legally imported into this country if declared at the border. But 21 U.S.C. § 173 makes importation of all narcotics illegal, and provides for seizure and summary forfeiture at the border. It is difficult for us to understand how a border declaration could serve to incriminate the would-be importer.

(f) That 26 U.S.C. § 4705(a), which makes unlawful the transfer of heroin unless pursuant to a written order on an official order form, secured by a registered dealer from the Secretary, violates the transferor's Fifth Amendment right against self incrimination because the form, when completed as required by the statute, contains incriminating information, must be kept available for inspection by law enforcement officers and a copy filed with the Secretary.

Minor v. United States, 396 U.S. 87, 90 S.Ct. 284, Dec. 8, 1969, considered and rejected this identical proposition.

(g) That because heroin was declared contraband in 1956 by the amendment to 18 U.S.C. § 1402, "there is no longer transfer of heroin on order forms," and 26 U.S.C. § 4705(a) is rendered inapplicable.

But such was not the effect of the amendment. As the Court noted in Minor, "The Harrison Narcotics Act, 26 U.S.C. § 4701 et seq., applies to various drugs, including heroin."

(h) That 26 U.S.C. § 4705(a) is a penal rather than a taxing statute and therefore beyond the power of Congress to enact.

Again referring to Minor we read: "But these very order form provisions were upheld long ago as valid revenue laws even though they operated to prevent large classes of people from obtaining order forms * * * and hence from acquiring drugs at all (citations omitted). A statute does not cease to be a valid tax measure because it deters the activity taxed, because the revenue obtained is negligible or because the activity is otherwise illegal."

(i) That because narcotics agents "are exempt from registering as a prerequisite to obtaining order forms from the Treasury Department and are not required to supply a form when acquiring narcotics (26 Code of Federal Regulations 151.-221)," it was impossible for Chisum to have secured an order form from the narcotics agent and that the convictions rested upon such failure constituted a deprivation of due process.

While it is true that Regulation 151.-221 exempts certain officials from the registration requirements, it does not extend to narcotics agents; nor does it dispense with the use of order forms even by exempted officials. These conclusions are manifested by the wording of two companion regulations. Thus 151.223 limits the registration exemption to any civil official who "is engaged in any activity mentioned in section 4721 * * * " 26 U.S.C. § 4721 covers "every person who imports, manufactures, produces, compounds, sells, deals in, dispenses or gives away any narcotic drugs * * *." And 151.224 makes provision for narcotics order forms and for their use by non-registered exempt officials.