UNITED STATES of America,
Plaintiff-Appellee,

v.

Anthony J. DEMMA,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Henry BRULAY, Defendant-Appellant.

Nos. 73–2312, 73–2354.

United States Court of Appeals,
Ninth Circuit.

Sept. 10, 1975.

Theodore A. Cohen (argued), Beverly
Hills, Cal., for defendant-appellant.

John J. Resich, Jr., Asst. U. S. Atty.,
Los Angeles, Cal. (argued), for plaintiff-
appellee.

OPINION

Before CHAMBERS, KOELSCH,
BROWNING, DUNIWAY, ELY, HUF-
STEDLER, WRIGHT, TRASK, CHOY,
GOODWIN, WALLACE and SNEED,
Circuit Judges.

HUFSTEDLER, Circuit Judge:

The law of entrapment in this circuit is confused and conflicting. Our cases can be reconciled neither with each other nor with *Sorrells v. United States* (1932) 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413; *Sherman v. United States* (1958) 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; and *United States v. Russell* (1973) 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366.

██ We now set the circuit's entrapment law in order by holding that a defendant may assert entrapment without being required to concede that he committed the crime charged or any of its elements. We overrule *Eastman v. United States* (9th Cir. 1954) 212 F.2d 320, the source of the former rule, and disapprove all authority in our circuit that relies on *Eastman* and its progeny.

Codefendants Demma and Brulay appeal from their convictions for conspiring to import and to distribute heroin. Brulay also appeals from his conviction for using a telephone to facilitate the conspiracy. The key issue is whether the district court erred in refusing to instruct on entrapment on the ground that the defense is available only to a defendant who concedes both the acts and the state of mind necessary to constitute the crime charged.

The Government's case-in-chief contained ample evidence that Demma and Brulay agreed to import from Mexico and to distribute to a federal undercover agent large quantities of heroin. Neither defendant denied these acts. Each defendant contended that he was not guilty, however, because he did not entertain the necessary intent to commit the crime. Demma testified that he acted in the belief that he was cooperating with the Government. He said that he thought he was helping his old friend, a government informant working with the undercover agent to obtain information useful to the Government. The evidence was sharply conflicting on the question whether Demma knew that his friend was a government informant when he agreed with him and Brulay to import and distribute heroin.

Brulay testified that he thought he was working with the Government by setting up a drug seizure in cooperation with the informant and the undercover agent. His parents had been arrested on federal drug charges, and he claimed that he was induced to enter the negotiations by being led to believe that his cooperation would help his parents obtain leniency. Brulay stopped trying to negotiate a seizure when his father told him to quit because of the great danger involved.

Neither Demma nor Brulay ever imported or distributed any heroin. Both were entitled to entrapment instructions, unless their denial that they entertained the necessary intent to commit the crime foreclosed the defense.

## I

The rule that a defendant wishing to claim entrapment must concede the crime charged was first announced in this circuit in *Eastman v. United States, supra*. The theory behind the rule is that it is factually inconsistent for a defendant to deny the crime charged, and, at the same time, to claim entrapment.

"Appellants, to say the least, take a very inconsistent position in this respect. Appellants have maintained throughout that they did not commit a crime. It logically follows that absent the commission of a crime there can be no entrapment. *Bakotich v. United States*, 9 Cir., 1925, 4 F.2d 386. The trial court understood this situation and very properly refused to inject into the case a question which could have no other result than to confuse." (212 F.2d at 322.)

The *Eastman* rule must be rejected for several reasons. First, in some of its applications, including the one by the district court in the case at bar, the rule conflicts with prevailing Supreme Court authority. Second, in other of its applications the rule has become detached from its theoretical moorings and cannot be justified by the inconsistency theory. Third, the inconsistency theory itself is seriously infirm.

In *Sorrells v. United States, supra,* the defendant had been convicted for possessing and selling whiskey in violation of the National Prohibition Act. Scienter was not an element of the offense. The defendant conceded that he possessed and sold the whiskey, but he claimed that he would not have done so if his reluctance had not been overcome by the government agent who induced him to make the sale. The majority of the court, speaking through Chief Justice Hughes, held that want of predisposition, coupled with governmental inducement equalled entrapment, a defense that was properly raised by a not guilty plea. The court's reasoning was that Congress could not have intended that the National Prohibition Act should apply to *entrapped* acts of possession and sale.

> "we are unable to conclude that it was the intention of the Congress in enacting this statute that its processes of detection and enforcement should be abused by the instigation by government officials of an act on the part of persons otherwise innocent in order to lure them to its commission and to punish them." (287 U.S. at 448, 53 S.Ct. at 215.)

The theory of the *Sorrells* approach to entrapment is that the acts necessary to constitute any federal crime must be *non-entrapped* acts; non-entrapment is an essential element of every federal crime which is put in issue whenever evidence is introduced suggesting that an unpredisposed defendant was induced by the Government to commit the acts charged. In *Sorrells,* Chief Justice Hughes expressly rejected the Government's contention that a claim of entrapment necessarily involved an admission of guilt and that it was in the nature of a plea in bar.

> "This, as we have seen, is a misconception. The defense is available, not in the view that the accused though guilty may go free, but that the government cannot be permitted to contend that he is guilty of a crime where the government officials are the instigators of his conduct." (287 U.S. at 452, 53 S.Ct. at 216.) [1]

As the district judge in the case at bar realized, the *Eastman* rule, by its terms, requires that a defendant wishing to claim entrapment concede the state of mind necessary to constitute the crime charged as well as the constituent acts. However, the requirement that the defendant concede a state of mind is in direct conflict with the *Sorrells* conception of entrapment. Under *Sorrells,* whenever the element of non-entrapment is put in issue the Government must prove beyond a reasonable doubt that the acts charged were non-entrapped acts. The Government bears this burden whether or not the crime charged involves a subjective, mental element and whether or not the defendant concedes any mental element involved. The *Eastman* rule relieves the Government of this burden whenever the crime charged involves a mental element which the defendant refuses to concede. Relieving the Government of the burden of proving that the necessary acts were non-entrapped conflicts fundamentally

1. The minority view in *Sorrells,* expressed by Mr. Justice Roberts, was that the defendant's "predisposition" or lack of it is not relevant to entrapment. The minority thought that the purpose of the entrapment defense is to discourage untoward government involvement in the manufacture of crime; entrapment excuses the commission of acts that would otherwise constitute a crime. Thus, entrapment is a special defense addressed to the court, the function of which is akin to that of the exclusionary rule. (*Sorrells v. United States, supra,* 287 U.S. at 453, 53 S.Ct. 210 (Roberts, J., concurring, joined by Brandeis and Stone, JJ.).)

The same divergence in the concept of entrapment has persisted in the Supreme Court since *Sorrells,* and the majority view has continued to prevail. (*Sherman v. United States, supra,* 356 U.S. at 378, 78 S.Ct. 819 (Frankfurter, J., concurring, joined by Douglas, Harlan, and Brennan, JJ.); *United States v. Russell, supra,* 411 U.S. at 436, 93 S.Ct. 1637 (Douglas, J., dissenting, joined by Brennan, J.); *id.* at 439, 93 S.Ct. 1637 (Stewart, J., dissenting, joined by Brennan and Marshall, JJ.).)

with the *Sorrells* conception of entrapment.

*Sorrells* recognized that the special and perverse evil of entrapment is that the Government induces an otherwise innocent person to commit certain acts and then attempts to punish him for those very acts. If the Government, in addition to inducing acts, induces scienter, then the evil has been multiplied.[2] But whether or not the Government succeeds in inducing or even tries to induce scienter, the primary, basic evil is that the Government has instigated the very activity which causes an otherwise innocent person to suffer a criminal sanction.[3]

In addition to conflicting with prevailing Supreme Court authority, the *Eastman* rule, in certain situations, cannot be justified even by the inconsistency theory that is the rule's *raison d'être*. The inconsistency theory speaks to those situations where the defendant himself denies the crime charged either at trial or at some pretrial stage of the criminal process. But if a defendant declines to testify at trial and otherwise refuses to comment on the crime charged, then he has not denied the crime. Entrapment may nonetheless become an issue at his trial if (1) the Government's case-in-chief suggests that the defendant who was not predisposed was induced to commit the crime charged, or (2) a defense or a government witness gives evidence suggesting entrapment.[4] In either event, the *Eastman* rule is inapplicable because

there is simply no inconsistency. The defendant has not denied the crime charged. At the close of a case in such a posture, defense counsel may and, indeed, he should argue to the jury that (1) the Government has not proved beyond a reasonable doubt that the defendant committed the crime charged, and (2) if the Government has so proved, then the Government has not proved beyond a reasonable doubt that the acts charged were non-entrapped. These arguments entail no factual inconsistency; they are merely garden-variety alternative contentions.[5]

The *Eastman* rule cannot be applied to preclude an entrapment defense in the type of situation just described because (1) there is no factual inconsistency and (2) application of the *Eastman* rule would foreclose the possibility of finding entrapment as a matter of law where a defendant has neither denied nor conceded the elements constituting the crime charged; a finding of entrapment as a matter of law cannot be thus foreclosed. Where the Government's own evidence establishes that the defendant was entrapped, the Government's case must be dismissed, even if the defendant has neither denied nor conceded the elements constituting the crime charged *(cf. Sherman v. United States, supra)*.

Up to this point, we have determined that the *Eastman* rule, inasmuch as it requires a concession of state of mind or any other element of the Government's case, conflicts with prevailing Supreme

---

2. Note that if the Government induces scienter, then it has necessarily induced the underlying activity, because presumably the activity issued in the service of scienter. The contrary, however, is not true. To have induced the underlying activity is not necessarily to have induced a particular state of mind, because the activity may reflect any of several different motives. The significant point is that to claim entrapment is to claim that the Government induced the acts necessary to constitute the crime charged, whether or not the Government also induced the requisite state of mind.

3. Instigation, however, is distinguishable from providing a favorable opportunity to break the law to one already ready and willing to do so.

*Cf. United States v. Blanca Pena-Ozuna*, 511 F.2d 1106 (9th Cir. 1975).

4. The sufficiency of the evidence to require charging the jury on the issue of entrapment has been dealt with by this court in *United States v. Payseur*, 501 F.2d 966, 971 (9th Cir. 1974); *United States v. Christopher*, 488 F.2d 849, 850–51 (9th Cir. 1973); *United States v. Glassel*, 488 F.2d 143, 146 (9th Cir. 1973). Nothing herein is intended to affect the authority of these cases.

5. *See United States v. Groessel* (5th Cir. 1971) 440 F.2d 602, 605; *Whittaker v. United States* (1960) 108 U.S.App.D.C. 268, 281 F.2d 630, 632.

Court authority. We have also determined that application of the *Eastman* rule cannot be justified by the inconsistency theory it purports to serve in cases where a defendant neither concedes nor denies the crime charged. Our final criticism of the *Eastman* rule is in some ways the most fundamental. The theoretical basis of the *Eastman* rule—that factually inconsistent defenses may not be asserted—is seriously infirm and deserves rejection for that reason alone.

■ It is well established that a defendant in a criminal prosecution may assert inconsistent defenses.[6] The rule in favor of inconsistent defenses reflects the belief of modern criminal jurisprudence that a criminal defendant should be accorded every reasonable protection in defending himself against governmental prosecution. That established policy bespeaks a healthy regard for circumscribing the Government's opportunities for invoking the criminal sanction.

■ The *Eastman* inconsistency theory is an exception to the rule in favor of inconsistent defenses. But it is an exception without any justification. There is no conceivable reason for permitting a defendant to assert inconsistent defenses in other contexts but denying him that right in the context of entrapment. Indeed, there is a compelling reason for not making an exception of the entrapment defense. The primary function of entrapment is to safeguard the integrity of the law enforcement and prosecution process. In light of this important public function, we conclude that the rule in

favor of inconsistent defenses must extend to the defense of entrapment.

■ Of course, it is very unlikely that the defendant will be able to prove entrapment without testifying and, in the course of testifying, without admitting that he did the acts charged. Unless the Government's case-in-chief discloses entrapment as a matter of law (an unusual phenomenon), the defendant must come forward with evidence of his non-predisposition and of governmental inducement (*Notaro v. United States* (9th Cir. 1966) 363 F.2d 169). A defendant can rarely produce such evidence without taking the stand—as did both defendants in the case at bar—and admitting that he did the acts to which the Government's witnesses attested.[7] When he takes the stand, the defendant forfeits his right to remain silent, subjects himself to all the rigors of cross-examination, including impeachment, and exposes himself to prosecution for perjury. Inconsistent testimony by the defendant seriously impairs and potentially destroys his credibility. While we hold that a defendant may both deny the acts and other elements necessary to constitute the crime charged and at the same time claim entrapment, the high risks to him make it unlikely as a strategic matter that he will choose to do so.

Despite the illegitimacy of its reasoning, *Eastman* has spawned many decisions in this circuit, and a confused lot they are. Some of these cases recite that the reason for requiring a defendant to admit or concede all the elements constituting the crime is that a failure to concede is inconsistent with entrapment.[8]

6. E. g., *United States v. Harrell* (5th Cir. 1970) 436 F.2d 606, 611–12 (denial of conspiracy and claim of entrapment); *Johnson v. United States* (1970) (*en banc*) 138 U.S.App.D.C. 174, 426 F.2d 651, 656 (denial of sexual intercourse and claim of consent); *Hansford v. United States* (1962) 12 U.S.App.D.C. 359, 303 F.2d 219, 221 (denial of drug transaction and claim of entrapment); *Whittaker v. United States* (1960) 108 U.S.App.D.C. 268, 281 F.2d 631, 632 (denial of underlying acts and claim of insanity); see also *United States v. Harbin* (4th Cir. 1967) 377 F.2d 78, 80; *People v. Perez* (1965) 62 Cal.2d 769, 44 Cal.Rptr. 326, 401 P.2d 934.

7. If the Government has not produced adequate evidence that he did the acts, then defendant's motion for judgment of acquittal would have been granted on that ground without reaching the entrapment issue.

8. E. g., *United States v. Hendricks* (9th Cir. 1972) 456 F.2d 167, 169; *Chisum v. United States* (9th Cir. 1970) 421 F.2d 207, 210; *Ortega v. United States* (9th Cir. 1965) 348 F.2d 874, 876; *Ramirez v. United States* (9th Cir. 1961) 294 F.2d 277, 283; *Brown v. United States* (9th Cir. 1958) 261 F.2d 848, 850.

Others simply invoke the requirement without any recitation of a reason,[9] even when there is no factual inconsistency between the denial of state of mind and the claim of improper governmental inducement of the unpredisposed defendant.[10] At least one case suggests that *Eastman* might be limited to inconsistencies between the denial of acts and the claim of entrapment.[11] Moreover, neither *Eastman* nor its progeny can be reconciled with pre-*Eastman* authority in this circuit permitting the defendant wishing to claim entrapment to concede nothing.[12] By overruling *Eastman* and disapproving all authority in this circuit that relies on *Eastman* and its offspring, we create order out of our circuit's entrapment chaos.

Continued adherence to *Eastman* would have generated serious constitutional problems by conditioning the assertion of a defense on the defendant's yielding his presumption of innocence, his right to remain silent, and his right to have the Government prove the elements of the crime beyond a reasonable doubt.[13]

As long as the *Eastman* "rule" lives, this circuit will be in conflict with *Sorrells, Sherman,* and *Russell*; our internal law will be in disarray; and the constitutional issues will hover. No sound reason exists to perpetuate the *Eastman* aberration. We now overrule it, and we disapprove the cases in our circuit that have followed the *Eastman* rule. In harmonizing the law of the circuit with the rationale of *Sorrells, Sherman,* and *Russell* and eradicating our aberrant cases, we have no occasion to and we do not

rest on constitutional grounds; on the contrary, our restatement of entrapment law in the circuit avoids the constitutional problems that lurked in the *Eastman* line of cases that we overturn today.

## II

█ Both Demma and Brulay claim error in the exclusion of psychiatric evidence concerning Demma's mental condition. Demma had been examined before trial by a psychiatrist who concluded that Demma suffered from physical and psychological difficulties which manifested themselves in memory impairment, inability to distinguish truth from falsity, and a penchant for forming grandiose schemes that bordered on the delusional. The evidence was not offered to prove that Demma was insane; the insanity defense was not raised. The evidence was offered by Demma to prove that he was incapable of forming the requisite intent to commit the conspiracy offense charged. Brulay wanted to introduce the evidence to impeach Demma's credibility, because his testimony damaged both Brulay's case and his own.

We have not held that expert testimony from qualified psychiatrists is inadmissible when it is offered to prove that a defendant was or was not capable of forming a specific intent that is an element of the offense.[14] Rather, we have given the district court wide latitude in admitting or excluding psychiatric evidence directed to the capacity of a defendant to entertain a specific intent or directed to the credibility of a witness. (*United States v. Barnard* (9th Cir. 1973) 490 F.2d 907; *cf. Wahrlich v. Arizona* (9th Cir. 1973) 479 F.2d 1137.) In *Bar-*

9. *E. g., United States v. Rodriquez* (9th Cir. 1971) 446 F.2d 859, 860.

10. *E. g., United States v. Barrios* (9th Cir. 1972) 457 F.2d 680, 682; *United States v. Sanchez* (9th Cir. 1971) 440 F.2d 649, 650; *Corcoran v. United States* (9th Cir. 1970) 427 F.2d 16, 17.

11. *Carbajal-Portillo v. United States* (9th Cir. 1968) 396 F.2d 944, 948 n. 2.

12. *Driskill v. United States* (9th Cir. 1928) 24 F.2d 525; *Woo Wai v. United States* (9th Cir. 1915) 223 F. 412.

13. The constitutional arguments are marshaled in Groot, "The Serpent Beguiled Me and I (Without Scienter) Did Eat—Denial of Crime and the Entrapment Defense," 1973 *U. of Ill. Law Forum* 254, 269–75.

14. The use of expert testimony for this purpose is entirely distinct from the use of such testimony to relieve a defendant of criminal responsibility based on the insanity defense or one of its variants, such as diminished capacity. *United States v. Brawner* (1972), 153 U.S. App.D.C. 1, 471 F.2d 969, 998 *et seq.*

*nard,* we indicated that we would not upset a district court's exercise of that discretion unless it was "manifestly erroneous." (*Id.* at 913.)[15] The question whether the expert psychiatric evidence should have been admitted in this case is a close one; thus, we cannot say that the district court's refusal to admit the evidence was manifestly erroneous.

### III

▮ Brulay contends that the district court abused its discretion in refusing to admit polygraphic evidence, the substance of which was that a qualified expert had questioned him about his intent to import and to distribute heroin and that, truthfully in the expert's opinion, Brulay had denied that intent and had explained that he was cooperating in narcotics dealings in order to modify his father's punishment. The district court excluded the evidence because it was not adequately exculpatory and because the probative force of the evidence was seriously diminished by the lapse of time between the occurrence of the events and the taking of the test. Our circuit has been inhospitable to contentions that a district court has abused its discretion in refusing to admit polygraphic evidence. (*E. g., United States v. DeBetham* (9th Cir. 1972) 470 F.2d 1367.) We decline to reexamine our restrictive views in this case.

The remaining contentions do not have sufficient merit to warrant comment.

Reversed and remanded.[16]

CHAMBERS, KOELSCH, BROWNING, DUNIWAY, ELY, CHOY, GOODWIN and SNEED, Circuit Judges, concur in this majority opinion.

WALLACE, Circuit Judge (specially concurring in part and dissenting in part):

As to Demma, I concur only with that part of the majority opinion which deals with the facts before us. He admitted committing the underlying acts necessary to the conspiracy. He properly contends that, in arguing entrapment, he need not also have to admit an intent to carry out the conspiracy. With this I agree and, therefore, his case must be reversed. But I decline to take the succeeding journey of rewriting entrapment law which is not in issue. Even in an en banc case, wisdom dictates deciding only the case before us.

> The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property which are actually controverted in the particular case before it. . . . [T]he court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it.

*California v. San Pablo & Tulare R.R. Co.,* 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893).

Similarly, I find no facts in the case raising an issue addressed by footnote 2 and the textual language at page 984, *ante.* Indeed it seems inconsistent with the requirement that the government agents "implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission . . . ." *Sorrells v. United States,* 287 U.S. 435, 442, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932). "It is only when the Government's deception actual-

---

15. Our circuit has perhaps thus conferred greater discretion on the district court than have some of the other circuits. *E. g., United States v. Brawner* (1972), 153 U.S.App.D.C. 1, 471 F.2d 969, 998–1002; *Rhodes v. United States* (4th Cir. 1960) 282 F.2d 59. *See also* A.L.I. Model Penal Code § 4.02(1), Official draft (1962).

16. Defendant Brulay's counsel was misled, as was the district court, by the confused state of the entrapment law in this circuit. Brulay should not be penalized by our invoking the waiver principle to prevent our reaching the refusal to give an entrapment instruction, especially in view of the fact that his co-defendant's conviction is today reversed. (*Cf. United States v. Scott* (9th Cir. en banc 1970) 425 F.2d 55.)

ly implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." *United States v. Russell,* 411 U.S. 423, 436, 93 S.Ct. 1637, 1645, 36 L.Ed.2d 366 (1973).

Further, I specifically disassociate myself from the language in footnote 1, *ante,* p. 983, which suggests an analogy between entrapment and the exclusionary rule. Although the majority notes the rule is a minority viewpoint, it fails to state that the majority of the Supreme Court has specifically rejected the analogy. *United States v. Russell, supra,* 411 U.S. at 430–31, 93 S.Ct. 1637.

Neither can I agree with the statement of the majority that "[t]he primary function of entrapment is to safeguard the integrity of the law enforcement and prosecution process." *Ante,* p. 985. While this is one function of entrapment, it is constrained by a limiting principle: specifically that the defendant must not be predisposed to commit the crime. To neglect this limiting principle is, again, to approach the position of the minority, not the majority, of the Supreme Court. *Compare* Justice Rehnquist's majority opinion in *United States v. Russell, supra,* 411 U.S. at 429–30, 432–36, 93 S.Ct. 1637, *with* the dissenting opinions of Justices Douglas and Stewart, at 436–45, 93 S.Ct. 1637.

I am also persuaded that the majority establishes too imprecise a standard when it states that "evidence suggesting entrapment" is sufficient to raise the question. *Ante,* p. 984. I would substitute "permitting a reasonable doubt" for "suggesting."

Finally, I have concluded that Brulay should not receive the benefit of Demma's request for the entrapment instruction. Brulay failed to request such an instruction. *United States v. Scott,* 425 F.2d 55 (9th Cir. 1970) (en banc), relied on by the majority, is distinguishable. There we held that *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), was retroactive and applied to Scott. At the time of trial, *Leary* had not been decided and Scott was confronted with a "solid wall of circuit court authority, including our own, sustaining the presumption [held unconstitutional in *Leary*] against constitutional attack." 425 F.2d at 57. Here, there was no such "solid wall" of authority. On the contrary, as the majority points out, the prior Ninth Circuit decisions are inconsistent with the decisions of the Supreme Court and "confused and conflicting" among themselves. *Ante,* p. 982. Furthermore, at least Scott raised the question on appeal. Here, Brulay did not raise the question until asked to do so by the order taking the case en banc.

Moreover, in *Scott* we decided the retroactivity question properly since *Leary* was decided on constitutional grounds and all previous non-objecting defendants could obtain the same relief as Scott by a motion pursuant to 28 U.S.C. § 2255. Here, the retroactivity question remains undecided and section 2255 relief is problematical since our decision in this case is not on constitutional grounds. *See Davis v. United States,* 411 U.S. 233, 239, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973) (dictum). The result is that Brulay receives the benefit of a special retroactivity rule applicable only to himself among all non-objecting defendants. Such an arbitrary result does not seem wise to me. I would affirm as to Brulay.

EUGENE A. WRIGHT and TRASK, Circuit Judges, concur in this specially concurring and dissenting opinion.