811 P.2d 1071

STATE of Arizona, Appellee,

v.

David M. SOULE aka David Michael Soule, Appellant.

STATE of Arizona, Appellee,

v.

Herbert Donald ABRAMS, Appellant.

Nos. CR-90-0042-PR, CR-90-0022-PR.

Supreme Court of Arizona,
En Banc.

March 21, 1991.

Reconsideration Denied June 25, 1991.*

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser, Sp. Counsel and Su-

sanna C. Pineda, Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for State of Arizona.

Dean W. Trebesch, Maricopa County Public Defender by James L. Edgar, Deputy Maricopa County Public Defender, Phoenix, for David M. Soule.

Michael S. Mussman, Pima County Legal Defender by Kathleen C. Dubois, Asst. Defender, Tucson, for Herbert Donald Abrams.

OPINION

CAMERON, Justice.

## I.  JURISDICTION

Defendant, David M. Soule (Soule), petitions this court to review an opinion of the court of appeals, Division I, upholding the trial court's ruling requiring Soule to admit the elements of the crime before he could plead entrapment. 164 Ariz. 165, 791 P.2d 1048. Defendant, Herbert Donald Abrams (Abrams), petitions this court to review a memorandum decision of the court of appeals, Division II, holding that Abrams could not argue entrapment without admitting all elements of the crime.  164 Ariz. 185, 791 P.2d 1068.

Because of the similarity of the issues, we consolidated the two matters for oral argument and decision.  We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. 12-120.24 and Ariz.R.Crim.P. 31.19(f), 17 A.R.S.

## II.  QUESTION PRESENTED

In light of the recent United States Supreme Court decision in *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), will we continue to follow the Arizona rule requiring a defendant to admit all elements of the crime prior to entering a plea of entrapment? [1]

---

* Gordon, C.J., and Feldman, V.C.J., voted to grant reconsideration.

1. We also granted review on the question of retroactive or prospective application of our de-

cision.  Because we do not change the existing law in Arizona, we need not consider this question.

## III. FACTS

### A. *Soule*

In August 1989, a member of the Phoenix Police Department learned that Soule was selling heroin. An undercover police officer subsequently contacted Soule at his home. The officer told Soule that he was a heroin addict, but not strung out, and asked if he could buy some methadone. Soule sold him a small bottle of methadone. Five days later, the undercover police officer returned to Soule's home and asked to buy some more methadone, which Soule sold to him. On 14 August and 22 August, the officer purchased methadone from Soule at his home and at a methadone clinic.

At trial, the officer testified on cross-examination that an informant had introduced him to Soule and that the officer had initiated contact thereafter. Soule did not testify at trial, but witnesses for Soule testified that he was trying to break his heroin and alcohol habits, was not using heroin in August, and that a person in the methadone program could receive the drug at a clinic and take it home for self-administration. The trial court, after requiring Soule to admit the elements of the crime, instructed the jury on the entrapment defense. The jury acquitted Soule on the first sale of methadone but found him guilty of three subsequent sales. Soule appealed and the court of appeals affirmed the trial court's judgment and sentence.

### B. *Abrams*

In May 1987, Michael Batelli, an undercover Tucson Police Officer, was investigating illegal gambling in Pima County. As part of that investigation, he went to evening card games at the home of Alex Bonivitas. Abrams was a regular player at these games. During some of the card games, Abrams went to the back room of the house with Bonivitas for several minutes. This suggested to Batelli that Abrams may have been dealing, or doing, drugs.

In October 1987, Batelli met with Abrams and told him that he was disappointed with his current suppliers and that he and Abrams should deal with each other. Abrams refused, indicating that he did not deal with anyone he had not known for ten or twenty years. Later, Abrams approached Batelli and told him that he, Abrams, was now ready to deal. They discussed prices and arranged a sale in which Abrams sold two kilos of cocaine for $35,000. Abrams' defense was entrapment and he did not testify. After the state rested, Abrams' counsel requested that he be permitted to argue entrapment without admitting any elements of the charged crimes. Alternatively, counsel sought to admit only certain facts. The court denied both motions and Abrams was convicted. Abrams appealed and the court of appeals affirmed his conviction.

## IV. DISCUSSION

We have long held that a defendant must admit all elements of an offense to avail himself of the entrapment defense. *State v. Nilsen*, 134 Ariz. 431, 657 P.2d 419 (1983). In *Nilsen*, we held that the trial court erred by giving the jury an entrapment instruction when the defendant did not testify or did not otherwise present to the jury some evidence of the defendant's admission of the elements of the crime. *Id.* at 432, 657 P.2d at 420. *See also State v. McKinney*, 108 Ariz. 436, 501 P.2d 378 (1972) (a defendant who wishes to utilize the entrapment defense must admit substantial elements of the crime and one who denies knowledge of the crime may not raise the entrapment defense); *State v. Bean*, 119 Ariz. 412, 581 P.2d 257 (1978) (to claim entrapment defense, defendant must admit offense charged).

Defendants, however, urge that we follow *Mathews v. United States*, which permits a defendant in federal court to raise inconsistent defenses. 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). *Mathews* is not based on constitutional interpretation and is binding on the federal courts only; it is not binding on the states. Under *Mathews*, a defendant may plead not guilty and also plead entrapment without admitting all elements of the offense. The Supreme

Court held that "even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." *Id.* at 62, 108 S.Ct. at 886.

The majority in *Mathews* further said that, "[a]s a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a jury to reasonably find in his favor." *Id.* at 63, 108 S.Ct. at 887. The majority cited as a parallel rule the submission of lesser included offenses in the instructions to the jury. *Id.* For example, in *Stevenson v. United States,* 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896), the Court found sufficient evidence to entitle the defendant to a manslaughter instruction and to a self-defense instruction. This holding is contrary to the entrapment inconsistency theory adopted in *Nilsen.* The inconsistency theory, however, is not without its detractors.

Dean Paul Marcus has noted the seeming aberration of the inconsistency theory:

> The entrapment inconsistency theory is an exception to the rule in favor of inconsistent defenses. But it is an exception without any justification. There is no conceivable reason for permitting a defendant to assert inconsistent defenses in other contexts but denying him that right in the context of entrapment.

*The Entrapment Defense and the Procedural Issues: Burden of Proof, Questions of Law and Fact, Inconsistent Defenses,* 22 Crim.L.Bull. 197 (1986) (citing *United States v. Demma,* 523 F.2d 981, 985 (9th Cir.1975) (en banc)). Noting, however, that courts have not been unanimous in their treatment of the entrapment defense, Dean Marcus recognized two competing approaches to the problem:

> The traditional, and prevailing, view has been that a defendant cannot raise inconsistent defenses in the entrapment area. Courts consistently hold that "it would be inconsistent and confusing to allow a defendant to contend in one breath that he did not commit the crime,

and in the next breath that he was entrapped into committing it."

*Id.* at 229 (citing *United States v. Sears,* 343 F.2d 139, 143 (5th Cir.1965)). Other jurisdictions, however, do not accept this view, holding that a defendant "may deny [committing] every element of the crime charged yet properly allege that such acts as he did commit were induced by law enforcement officers." *Id.* at 230–31 (citing *People v. Perez,* 62 Cal.2d 769, 44 Cal. Rptr. 326, 401 P.2d 934 (1965)).

*Nilsen* follows the traditional and prevailing view. Comparing *Nilsen* and *Mathews, Nilsen* holds that the defendant must plead, "I did it, but I was entrapped," while *Mathews* holds that the defendant may plead, "I didn't do it, but if I did, I was entrapped." Although *Mathews* and *Nilsen* both have defects and advantages, we believe that *Nilsen* is the better approach for two reasons.

First, the *Mathews* rule fosters perjury and more litigation. Under *Mathews,* a defendant may take the stand and testify that he did not do the act. The jury is instructed not only on the elements of entrapment but the elements of the crime itself. To allow a defendant to testify as to two defenses that cannot *both* be true is equivalent to sanctioning a defendant's perjury. *Mathews,* 485 U.S. at 72, 108 S.Ct. at 891. (White, J., dissenting).

Second, allowing inconsistent defenses may confuse the jury. What must the jury think when the defendant testifies that he had nothing to do with the sale of narcotics and then the defendant's attorney tells the jury that, yes, the defendant did commit the crime but was entrapped? As Justice White noted in his dissent in *Mathews:*

> Finally, even if the Court's decision does not result in increased perjury at criminal trials, it will—at the very least—result in increased confusion among criminal juries. The lower courts have rightly warned that jury confusion is likely to result from allowing a defendant to say, *"I did not do it"* while *his lawyer* argues "He did it, but the government tricked him into it."

*Id.* We agree with the dissent in *Mathews.* The entrapment defense "is a relatively limited defense," available only to defendants who have "committed all the elements of a proscribed offense." *Mathews,* 485 U.S. at 71, 108 S.Ct. at 890. When a defendant testifies that he did not commit the elements of the offense charged, the entrapment defense is not a plausible alternate legal theory of the case. *Id.* at 71, 108 S.Ct. at 891. Entrapment is a proper defense under these circumstances only if the accused is lying. We do not believe that the defendant has a right to lie at trial or a right to solicit his attorney's aid in executing such a defense strategy. *See Nix v. Whiteside,* 475 U.S. 157, 173, 106 S.Ct. 988, 997, 89 L.Ed.2d 123, 138 (1986) (right to counsel includes no right to have a lawyer who will cooperate with planned perjury). Similarly, the entrapment defense is not available when a defendant who does not testify (as here), does not otherwise present to the jury some evidence of his admission of the elements of the crime. *Nilsen,* 134 Ariz. at 432, 657 P.2d at 420. Requiring a trial court to entertain an entrapment defense when the defendant has not admitted all elements of the crime does not serve the cause of criminal justice.

## V. CONCLUSION

Requiring a defendant to admit the elements of the crime before pleading entrapment may not prevent defendants from committing perjury or the jury from being confused. Allowing inconsistent defenses, however, will encourage perjury rather than chill it. We believe that a defendant's testimony will be more truthful and less confusing when he says, "I did it but I was entrapped," than if he says, "I didn't do it, but if I did, I was entrapped." After all, we still must determine the truth, and we should not encourage practices that detract from that purpose.

The courts of appeals' decisions are approved. The trial courts' rulings are affirmed.

MOELLER and CORCORAN, JJ., concur.

FELDMAN, Vice Chief Justice, dissenting.

By reaffirming the rule most prominently announced in *State v. Nilsen,* 134 Ariz. 431, 657 P.2d 419 (1983), the majority effectively leaves Arizona as a minority of one. While some other states forbid inconsistent defenses in entrapment situations, Arizona applies the rule more strictly than any other court by requiring the defendant to admit every element of the crime as a condition of pleading entrapment, even when denying an element would not be inconsistent with the entrapment defense. Marcus, *The Entrapment Defense and the Procedural Issues: Burden of Proof, Questions of Law and Fact, Inconsistent Defenses,* 22 CRIM.L.BULL. 197, 236 (1986).

Actually, what the majority calls the "Arizona rule" has no analytical basis at all. It was first announced in *State v. McKinney,* 108 Ariz. 436, 501 P.2d 378 (1972). *McKinney* offers no rationale for its holding but simply cites two federal cases: *United States v. Mehciz,* 437 F.2d 145 (9th Cir.1971), and *Munroe v. United States,* 424 F.2d 243 (10th Cir.1970). These two cases have no vitality since *United States v. Mathews,* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988).[2]

*Nilsen,* the "leading" Arizona case, offers no greater rationale for the rule than did *McKinney.* It simply cites *McKinney* and *State v. Montano,* 117 Ariz. 145, 571 P.2d 291 (1977). *Montano* does not consider the rule except to cite *State v. Keener,* 110 Ariz. 462, 520 P.2d 510 (1974), a case that is not remotely connected with the issue of whether a defendant must admit the crime to plead entrapment. *State v. Bean,* 119 Ariz. 412, 581 P.2d 257 (1978), cited by the majority, does not analyze the

**2.** In fact, *Mehciz,* which was based in turn on *Ramirez v. United States,* 294 F.2d 277 (9th Cir.1961), which relied on *Eastman v. United States,* 212 F.2d 320, 322 (9th Cir.1954), was overruled by the ninth circuit in 1975. *United*

*States v. Demma,* 523 F.2d 981, 982 (9th Cir. 1975) (overruling and disapproving of all authority in the ninth "circuit that relies on *Eastman* and its progeny").

issue but simply relies on *State v. Mendoza*, 109 Ariz. 445, 511 P.2d 627 (1973), which in turn merely cites *McKinney*.

Actually, the Arizona rule seems to be an example of the common law process at its worst. Based on an incorrect citation and two federal precedents that, like Ishmael, were long ago disowned and exiled by the courts that gave them birth, this court created a legal construct without ever examining the logic and reason for its position. Today, finally presented with the opportunity to do so, the court has chosen to follow the Arizona rule, no matter how bad it is, perhaps believing that past mistakes may be corrected by frequent repetition. The majority justifies its result by advancing arguments that will not withstand analysis.

As Professor Marcus points out, even in the states that generally require the defendant to admit the crime to plead entrapment, exceptions are made in the following situations:

1. The defendant may admit the criminal act but deny the requisite mental state, arguing that if the jury disagrees, it should acquit him because the acts were induced by the government. Marcus, *supra*, 22 CRIM.L.BULL. at 237. The rationale is simply that there is no fundamental inconsistency between denying the required mental state and arguing the physical act charged was prompted by improper government conduct. *Mathews*, 485 U.S. at 65, 108 S.Ct. at 888.

2. Where the entrapment evidence enters the case through the prosecution's presentation, some courts reason that the government itself has raised the issue and do not require the defendant to admit the elements of the crime to argue entrapment. Marcus, *supra*, 22 CRIM.L.BULL. at 239.

3. The entrapment defense is permitted where analysis shows that some other defense that the defendant wishes to raise is not actually inconsistent with entrapment. It would be difficult, for instance, to imagine why a defendant charged with theft by receiving property worth $1,000 should not be allowed to both contest the value of the property—arguing, for instance, that it falls within the petty theft statute—and at the same time allege entrapment. It is difficult to comprehend why a defendant charged with conspiracy should not be allowed to plead entrapment, admitting the overt act but arguing that he did not engage in the conspiracy itself. *See Henderson v. United States*, 237 F.2d 169 (5th Cir.1956).

The majority in this case justifies Arizona's continued adherence to an outdated position by arguing that the "*Mathews* rule fosters perjury.... To allow a defendant to testify as to two defenses that cannot *both* be true is equivalent to sanctioning a defendant's perjury." at 1073 (emphasis in original). This conclusion ignores both theory and reality. As noted above, there are many situations in which both defenses can be true, and only a jury can determine whether there is any real inconsistency. Of course, some defendants will abuse the system by arguing that "I wasn't there" on the one hand and "the state entrapped me" on the other. The majority sells the system short when it unrealistically assumes that the potential of such abuse creates a serious problem. The best rebuttal to this comes from Chief Justice Rehnquist:

> We would not go so far as to say that charges on inconsistent defenses may not on occasion increase the risk of perjury, but particularly in the case of entrapment we think the practical consequences will be less burdensome than the Government fears. The Court of Appeals in *United States v. Demma*, 523 F.2d 981, 985 (CA9 1975) (en banc), observed:
>
> > "Of course, it is very unlikely that the defendant will be able to prove entrapment without testifying and, in the course of testifying, without admitting that he did the acts charged.... When he takes the stand, the defendant forfeits his right to remain silent, subjects himself to all the rigors of cross-examination, including impeachment, and exposes himself to prosecution for perjury. Inconsistent testimony by the defendant seriously impairs and potentially destroys his credibility. While we hold that a defendant may both deny the acts and other elements necessary to constitute the crime charged and at the same time claim entrapment, the high risks to him

make it unlikely as a strategic matter that he will choose to do so."

*Mathews,* 485 U.S. at 65, 108 S.Ct. at 888.

The quoted words also destroy the majority's second claim—that allowing "inconsistent defenses may confuse the jury. What must the jury think ...?" at 1073. The answer is obvious: the jury will think the defendant is both guilty as charged and lying. The prosecutor, one hopes, will help the jury appreciate the defendant's evil purpose in taking truly inconsistent positions. I have no doubt the jury will send an appropriate message through the verdict.[3]

I conclude, therefore, that with entrapment, as in all other civil and criminal cases, the defendant should be allowed to plead defenses that may be inconsistent. In many cases, the defenses will not be truly inconsistent, and where they are, I am confident that jurors will handle the problem. The majority's position, on the other hand, forecloses defendants from raising legitimate defenses, relieves the prosecution of its constitutional burden of proving the elements of the case (Marcus, *supra,* 22 CRIM.L.BULL. at 240), and adopts a philosophy supported only by surface plausibility. Arizona does not need to be a minority of one unless it stands for some principle that makes sense.

Respectfully, therefore, I dissent and would follow Chief Justice Rehnquist's majority opinion in *Mathews.*

GORDON, Chief Justice, concurring.

I concur in Vice Chief Justice Feldman's dissent.

---

**3.** See, for example, *Johnson v. United States,* 426 F.2d 651 (D.C.Cir.1970). Johnson was charged with abducting the victim and raping her in his car. He denied the abduction, denied sexual intercourse, and denied that the woman had ever been in his car. He also contended she had consented. Acknowledging Johnson's right to argue inconsistent defenses, the court stated that "it would not be surprising if this position reflected unfavorably on Appellant's credibility...." *Id.* at 656. It seems to have done just that. Johnson was convicted; his conviction was affirmed. His bizarre story seems to have earned him up to eighteen years in prison. Cases such as *Johnson* prove the system *will* work if we do not impose artificial, illogical rules on it. The cause of criminal justice, including suppression of perjury, is best served by rules that permit defendants to raise and argue legitimate issues supported by the facts of the case.