IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA,
*Appellee,*

*v.*

MAVERICK KEMP GRAY,
*Appellant.*

No.  CR-15-0293-PR
Filed June 20, 2016

Appeal from the Superior Court in Pima County
The Honorable Scott Rash, Judge
No.  CR20132758-001
**AFFIRMED**

Opinion of the Court of Appeals, Division Two
238 Ariz. 147, 357 P.3d 831 (App. 2015)
**VACATED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, John R. Lopez IV, Solicitor General, Joseph T. Maziarz, Chief Counsel, Criminal Appeals Section, Christopher M. DeRose (argued), Senior Litigation Counsel, Phoenix, Attorneys for State of Arizona

Steven R. Sonenberg, Pima County Public Defender, David J. Euchner (argued), Deputy Public Defender, Tucson, Attorneys for Maverick Kemp Gray

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE CHIEF JUSTICE PELANDER and JUSTICES BRUTINEL and TIMMER joined, and JUSTICE BOLICK dissented.

CHIEF JUSTICE BALES, opinion of the Court:

**¶1**        Consistent with Arizona's common law, we hold that A.R.S. § 13-206(A) affords a defense of entrapment only when the defendant

affirmatively admits the substantial elements of the charged offense. A defendant cannot invoke this affirmative defense merely by declining to challenge the state's evidence, even when it includes incriminating statements made by the defendant to an undercover officer.

## I.

¶2 In June 2013, an undercover police officer approached Maverick Gray at a bus stop and asked if Gray could help him get some "hard," a slang term for crack cocaine. Gray agreed to obtain twenty dollars' worth of cocaine for a ten-dollar fee. The officer drove with Gray to an apartment complex and gave him twenty dollars; Gray left the car and returned ten minutes later with the cocaine; the officer then gave him ten dollars for the fee. Gray was arrested and charged with sale of narcotics.

¶3 The officer secretly recorded his conversation with Gray, who made statements such as "I'm a good person" and "I don't usually do this." As part of its trial evidence, the State presented the audio recording over Gray's objection that it was unreliable. Based on his recorded statements, Gray also asked the trial court to instruct the jury on the entrapment defense recognized in A.R.S. § 13-206. As a prerequisite for this defense, the statute requires a defendant to "admit by [his] testimony or other evidence the substantial elements of the offense charged." Concluding that Gray had not admitted these elements, the trial court refused the requested instruction. The jury found Gray guilty and the trial court sentenced him to 9.25 years in prison. The court of appeals affirmed, ruling that Gray was not entitled to an entrapment instruction because he had not admitted the substantial elements of the crime. *State v. Gray*, 238 Ariz. 147, 150 ¶ 12, 357 P.3d 831, 834 (App. 2015).

¶4 We granted review because the application of the statutory entrapment defense presents a recurring issue of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

¶5 We here consider whether § 13-206 requires a defendant who requests a jury instruction on the entrapment defense to affirmatively admit the substantial elements of the offense and, if so, what qualifies as "other

evidence" for such an admission. We review these issues de novo. *See State v. King*, 225 Ariz. 87, 89 ¶ 5, 235 P.3d 240, 242 (2010) (reviewing issues of statutory interpretation de novo); *State v. Miller*, 234 Ariz. 31, 43 ¶ 41, 316 P.3d 1219, 1231 (2013) (noting that trial court's refusal to give a jury instruction is reviewed for abuse of discretion, but legal adequacy of instructions is reviewed de novo).

¶6 When a statute's language is clear, "it controls unless an absurdity or constitutional violation results. But if the text is ambiguous, we also consider the statute's context; its subject matter, and historical background; its effects and consequences; and its spirit and purpose," *Metzler v. BCI Coca-Cola Bottling Co. of Los Angeles, Inc.* 235 Ariz. 141, 144-45 ¶ 13, 329 P.3d 1043, 1046-47 (2014) (citations and internal quotations omitted).

¶7 By its terms, § 13-206 requires a defendant "to admit . . . the substantial elements of the offense charged." The statute does not expressly address whether a defendant can "admit" the elements merely by not challenging the state's evidence. Gray argues that we should construe the statute as not requiring a defendant to affirmatively admit the elements. He notes that silence can, in some contexts, be deemed an admission, and he contends that we should deem his not offering evidence to contradict his recorded statements to be an "admission" for purposes of § 13-206. We find these arguments unconvincing in light of the background to the statute's enactment.

¶8 Before 1997, Arizona's entrapment defense was a creation of the common law. This Court addressed the defense in *State v. McKinney*, 108 Ariz. 436, 439, 501 P.2d 378, 381 (1972), holding that "[a] defendant who wishes to avail himself of a defense of entrapment must admit the substantial elements of the crime and one who denies knowledge of the crime may not raise the defense of entrapment." *McKinney* further described the requirements for a valid entrapment claim: "there has to exist activity by the State in the nature of inducement to commit a crime which the accused would not have otherwise committed, although providing the mere opportunity to commit the offense is not sufficient." *Id.* (citing *State v. Duplain*, 102 Ariz. 100, 101, 425 P.2d 570, 571 (1967)).

¶9 In 1983, we reaffirmed that a defendant, in order to invoke the entrapment defense, must admit the elements of the offense. *State v. Nilsen*,

134 Ariz. 431, 432, 657 P.2d 419, 420 (1983). *Nilsen* also clarified that although a defendant "need not take the stand in order to assert the defense of entrapment," a defendant cannot "passively admit" the elements. As alternatives to the defendant's testifying, *Nilsen* noted that a defendant may stipulate to the admission or have it read into evidence. *Id.*

¶10 Five years after *Nilsen*, the United States Supreme Court took a different approach to the entrapment defense as a matter of federal law – holding that a defendant is not required to admit the offense's elements in order to raise the defense. *Mathews v. United States*, 485 U.S. 58, 62 (1988). Thus, in federal court, defendants may contend both that they did not commit a charged offense and, alternatively, that their commission of the crime should be excused because they were entrapped. *Id.* States, however, are not required to follow *Mathews* because the defense is not of "constitutional dimension." *Id.* at 65, quoting *United States v. Russell*, 411 U.S. 423, 433 (1973).

¶11 Our Court rejected the *Mathews* approach in *State v. Soule*, 168 Ariz. 134, 137, 811 P.2d 1071, 1073 (1991). In reaffirming *Nilsen* by a 3-2 vote, this Court noted that "allow[ing] a defendant to testify as to two defenses that cannot *both* be true is equivalent to sanctioning a defendant's perjury," and "allowing inconsistent defenses may confuse the jury." *Id.* at 136, 811 P.2d at 1073. Two justices vigorously disagreed, arguing in favor of the *Mathews* rule. *Id.* at 137-39, 811 P.2d at 1074-76 (Feldman, V.C.J., joined by Gordon, C.J.). The Court, however, reiterated that entrapment "is a relatively limited defense available only to defendants who have committed all the elements of a proscribed offense," and that the defense is not available to defendants who do not testify or "otherwise present to the jury some evidence of [their] admission to the elements of the crime." *Id.* Thus, our common law consistently required a defendant to affirmatively admit the elements of the crime in order to claim entrapment.

¶12 In 1997, the legislature codified the entrapment defense by enacting § 13-206, which provides that the defendant must "admit by testimony or other evidence the substantial elements of the offense charged." Gray argues that the legislature, by referring to "other evidence," intended to expand the circumstances in which a criminal defendant may "admit" the elements of a crime to include a defendant's merely declining to challenge the state's evidence.

4

**¶13** Criminal statutes are interpreted in light of their common law antecedents, although Arizona has abolished common law crimes and defenses. *See* A.R.S. § 13-103(A); *Engle v. State*, 53 Ariz. 458, 465, 90 P.2d 988, 991 (1939). Section 13-206 does not itself reflect any intent to alter the common law requirement that a defendant affirmatively admit the elements of the offense. Moreover, the legislative fact sheet for the bill that became § 13-206 noted that "[t]he definition of entrapment is derived from the definition used in case law," Arizona State Senate, H.B. 2002 Fact Sheet at 1 (1997), and that the statute "requires that a defendant admit to committing the crime he or she is charged with in order to use the affirmative defense of entrapment." *Id.* at 2.

**¶14** We hold that the legislature in enacting § 13-206 generally codified the *Nilsen* rule – in order to raise an entrapment defense, the accused must affirmatively admit, by testimony or other evidence, the substantial elements of the offense. (*Nilsen* and *Soule* referred interchangeably to "substantial elements" and "all elements" of the offense, and neither party here has argued that there is a difference.) Such an admission cannot be accomplished merely by the defendant passively declining to challenge the state's evidence. But we also reject the State's argument that, for purposes of § 13-206, "other evidence" refers only to a defendant stipulating at trial or having an admission read into evidence. In referencing these alternatives, *Nilsen* did not exhaustively identify the ways in which a defendant can admit the elements of a crime.

**¶15** *Nilsen* contemplated an affirmative admission by a defendant's testimony or "any other manner," 134 Ariz. at 431, 657 P.2d at 419. "Other evidence" is not limited to a post-charge admission, but instead only requires evidence of a defendant's affirmative admission of the elements. For example, a defendant who is given *Miranda* warnings and makes a statement to the police could rely on his admissions to satisfy § 13-206(A), as long as the defendant does not contest the validity of the confession or raise inconsistent defenses.

**¶16** Gray also argues that requiring a defendant to affirmatively admit the elements of a crime before claiming entrapment conflicts with the Fifth Amendment's guarantee that "no person shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This argument founders because entrapment is an affirmative defense – it is not a denial of an element of the offense or criminal responsibility, but instead

"attempts to excuse the criminal actions of the accused." A.R.S. § 13-103(B). *See United States v. Braver*, 450 F.2d 799, 803 (2d Cir. 1971*)* (noting that defense "does not negative any essential elements" of the crime at issue).

¶17 Entrapment presupposes that the defendant has committed the criminal offense charged, but "the idea of committing the offense started with law enforcement officers or their agents rather than with the person" and "the law enforcement officers or their agents urged and induced the person to commit the offense." A.R.S. § 13-206(B)(1)-(2). *See also* Paul Marcus, The Entrapment Defense, § 6.02D (4th ed. 2012) (noting that federal constitution does not preclude requiring defendant to prove entrapment as an affirmative defense); *cf. Dixon v. United States*, 548 U.S. 1, 5-8 (2005) (recognizing that Constitution allows placing burden on defendant of proving affirmative defense of duress).

¶18 Requiring a defendant who chooses to assert an entrapment defense to admit the elements of the charged offense does not "compel" self-incrimination. *See Bueno v. Hallahan*, 988 F.2d 86, 88 (9th Cir. 1993) (ruling that trial court did not violate due process by following Arizona law and requiring defendant to admit all elements of offense before instructing jury on entrapment). "That the defendant faces . . . a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination." *Williams v. Florida*, 399 U.S. 78, 84 (1970) (holding that privilege against self-incrimination is not violated by requiring defendant to give notice of alibi defense and to disclose alibi witnesses); *see State v. Seliskar*, 298 N.E.2d 582, 583 (Oh. 1973) (requiring defendant to offer evidence to establish self-defense does not violate privilege against self-incrimination).

¶19 Limiting the entrapment defense to those who choose to admit the elements of the crime also does not implicate the "unconstitutional conditions" doctrine. *See Corbitt v. New Jersey*, 439 U.S. 212, 218 (1978) (holding that Fifth Amendment privilege was not unconstitutionally burdened by a statute making first-degree murder defendants who pleaded no contest eligible for sentence of less than life imprisonment); *cf. Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 285-88 (1998) (holding, irrespective of "unconstitutional conditions" doctrine, that Fifth Amendment privilege is not violated by state's drawing adverse inference from defendant's declining to testify at voluntary clemency hearing). If states can constitutionally "condition" eligibility for a reduced

sentence on a defendant's pleading guilty or no contest, which results in a conviction, there similarly is no constitutional bar to Arizona limiting the entrapment defense to defendants who admit the elements of a crime, but still retain the prospect of acquittal.

¶20    We turn to Gray's argument that his recorded statements are "other evidence" sufficient to show that he affirmatively admitted the substantial elements of the charged offense. Even if we assume, without deciding, that a defendant's recorded statements to an undercover officer could constitute "other evidence" for § 13-206(A) purposes, Gray's argument is not convincing. He was charged with violating A.R.S. § 13-3408(A)(7), which provides that "[a] person shall not knowingly . . . transport for sale, import into this state, offer to transport for sale or import into this state, sell, transfer or offer to sell or transfer a narcotic drug." Although Gray made incriminating statements in his recorded conversation, he did not affirmatively admit the substantial elements of this offense. There is a difference between a defendant admitting the commission of a crime and unwittingly inculpating himself. Moreover, although the officer asked Gray to help him obtain "some hard," the recorded conversation alone does not prove that Gray in fact provided drugs to the officer. That Gray did not contest the officer's testimony explaining the events captured in the audio recording does not amount to an affirmative admission.

¶21    Finally, we note that the dissenting opinion observes that Arizona has adopted a uniquely narrow - indeed, "draconian" - view of the entrapment defense, ¶ 25, and that Gray, unable to assert such a defense, "has been sentenced to over nine years in jail for accepting an undercover officer's invitation to obtain twenty dollars' worth of crack for a fee of ten dollars." ¶ 56. As a matter of policy, we might well agree that the entrapment defense should be more widely available, but our legislature has adopted a different view in A.R.S. § 13-206 by expressly limiting the defense to those who admit the elements of the crime. Gray's sentence also reflects legislative policy judgments – he received the statutory presumptive sentence under A.R.S. § 13-703(I) because he committed the offense at issue while on release after a prior conviction for a drug-related offense. Reconsidering these policy judgments is within the purview of the legislature rather than the courts.

**III.**

**¶22**        Because Gray did not affirmatively admit to the substantial elements of the offense charged, the trial court did not abuse its discretion in denying his requested entrapment instruction.   We affirm Gray's conviction and sentence, and we vacate the opinion of the court of appeals.

BOLICK, J., dissenting:

¶23 I believe that the entrapment defense requirement in A.R.S. § 13-206(A) presents serious constitutional concerns; and that by the statute's plain meaning, Gray is entitled to raise an entrapment defense. Accordingly, I respectfully dissent.

**I.**

¶24 Arizona is unique in many ways, most of them good. It is a freedom-loving state, as reflected in the words engraved above the entrance to our Supreme Court: "Where law ends, tyranny begins." This case illustrates the wisdom of those words.

¶25 One way in which Arizona is unique, unfortunately, is its statutory requirement that a criminal defendant must admit the substantial elements of the crime before raising an entrapment defense, a rule the majority today affirms. Arizona's outlier status in that regard is well-recognized but not well-regarded. *See, e.g.*, Marcus at § 6.13 ("Perhaps the court to follow most strictly the inconsistent defense principle is the Arizona Supreme Court" and "the Arizona view is in the distinct minority"); *Soule*, 168 Ariz. at 137, 811 P.2d at 1074 (Feldman, J., dissenting) ("the majority effectively leaves Arizona as a minority of one").[1] There are many issues on which Arizona might productively blaze a distinctive trail, but its draconian requirement for invoking the entrapment defense is not one of them.

---

[1] Justice Feldman went on to explain, "While some other states forbid inconsistent defenses in entrapment situations, Arizona applies the rule more strictly than any other court by requiring the defendant to admit every element of the crime as a condition of pleading entrapment, even when denying an element would not be inconsistent with the entrapment defense." *Soule*, 168 Ariz. at 137, 811 P.2d at 1074. After *Soule*, Mississippi adopted a statutory requirement nearly identical to Arizona's. Miss. Code Ann. § 99-1-25 (2005). Previously the Mississippi Supreme Court had abolished the rule that a defendant must admit the offense before receiving an entrapment instruction. *Hopson v. State*, 625 So.2d 395 (Miss. 1993).

¶26     The majority points out that entrapment is a statutorily based affirmative defense, and that a criminal defendant has no constitutional right to invoke it.  Hence, the majority concludes, the state may condition the exercise of the defense however it chooses.  To the contrary, by requiring a defendant to affirmatively admit the substantial elements of the crime, the statute (especially as construed in this decision) implicates the defendant's right against self-incrimination, protected both by the Fifth Amendment ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."), and by article 2, section 10 of the Arizona Constitution ("No person shall be compelled in any criminal case to give evidence against himself . . . .").

¶27     The entrapment defense plays an important role not only in protecting the due process rights of criminal defendants by ensuring that they will be punished only for crimes for which they are genuinely culpable, but in constraining government conduct that is incompatible with a free society.  As the United States Supreme Court declared in *Sorrells v. United States*, 287 U.S. 435, 452 (1932), "The defense is available, not in the view that the accused though guilty may go free, but that the government cannot be permitted to contend that he is guilty of a crime where the government officials are the instigators of his conduct."

¶28     The Court formally articulated the entrapment defense in *Sorrells*, in which the defendant pleaded not guilty to charges of possessing and selling whiskey in violation of Prohibition laws and also raised an entrapment defense.  *Id*. at 438. Construing the applicable criminal statutes to allow an entrapment defense, the majority ruled that the question of entrapment should be presented to the jury.  *Id*. at 452.

¶29     Justice Owen Roberts, joined by Justices Brandeis and Stone, agreed with the result but issued a separate concurring opinion.  The trio defined entrapment as "the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer." *Id*. at 454.  However, differing with the opinion of the Court, they concluded that the entrapment defense did not derive from statute.

> The doctrine rests, rather, on a fundamental rule of public policy.  The protection of its own functions and the preservation of the purity of

> its own temple belongs only to the court. It is
> the province of the court and of the court alone
> to protect itself and the government from such
> prostitution of the criminal law. The violation
> of the principles of justice by the entrapment of
> the unwary into crime should be dealt with by
> the court no matter by whom or at what stage of
> the proceedings the facts are brought to its
> attention.

*Id*. at 457.

**¶30** Under any circumstances, entrapment is no easy defense. As defined in *Sorrells* and widely applied since then, the defense is established only when "the particular act was committed at the instance of government officials," weighed against any evidence regarding "the predisposition and criminal design of the defendant." *Id*. at 451. Where it is an affirmative defense, as in Arizona, the defendant has the burden of proof.

**¶31** In the early days of the entrapment defense, most jurisdictions also held that the defense could not be raised unless the defendant admitted the commission of the acts constituting the crime, on the ground that innocence and entrapment are inconsistent defenses. *See* Marcus at § 6.11. It is that conventional wisdom the majority embraces in this case. But over time, a number of courts came to reject that view, including the United States Supreme Court in *Mathews*, 485 U.S. at 64-65.

**¶32** *Mathews* presented the question of whether under federal law, a criminal defendant could raise an entrapment defense without admitting all of the elements of the crime. *Id*. at 59. In a decision by Chief Justice Rehnquist, the Court concluded, "We are simply not persuaded by the Government's arguments that we should make the availability of an instruction on entrapment where the evidence justifies it subject to a requirement of consistency to which no other such defense is subject." *Id*. at 66.

**¶33** Justice Scalia concurred, observing that "the defense of entrapment will rarely be genuinely inconsistent with the defense on the merits, and when genuine inconsistency exists its effect in destroying the defendant's credibility will suffice to protect the interests of justice." *Id*. at

11

67 (Scalia, J., concurring). An example that immediately comes to mind from this observation is a crime that requires specific intent. Certainly it would not be inconsistent to admit engaging in certain actions while denying the intent to commit the crime. Yet doing so in "affirmative admission" jurisdictions such as Arizona would mean foregoing either an innocence or entrapment defense even where both may be true.

¶34 The Ninth Circuit, in a decision cited with approval by the United States Supreme Court in *Mathews*, *id*. at 65-66, held likewise that there "is no conceivable reason for permitting a defendant to assert inconsistent defenses in other contexts but denying him that right in the context of entrapment." *United States v. Demma*, 523 F.2d 981, 985 (9th Cir. 1975) (*en banc*). "Indeed, there is a compelling reason for not making an exception of the entrapment defense. The primary function of entrapment is to safeguard the integrity of the law enforcement and prosecution process." *Id*.

¶35 Like other jurisdictions, Arizona traditionally followed the "inconsistent defense" rule that barred an entrapment defense absent an affirmative admission to the elements of the crime. *Nilsen*, 134 Ariz. at 431, 657 P.2d at 419. But unlike other jurisdictions, it did not abandon or modify the rule after *Mathews*. Rather, the Court reaffirmed the rule by a 3-2 vote in *Soule*, invoking the dissent in *Mathews*. *Soule*, 168 Ariz. at 136-37, 811 P.2d at 1073-74. Subsequently, the rule was codified in A.R.S. § 13-206(A).

¶36 Commentators have observed that requiring admission of the substantial elements of the crime as a prerequisite to an entrapment defense raises Fifth Amendment self-incrimination concerns. *See, e.g.*, Marcus at § 6.13; Kristine K. Keller, *Evolution and Application of the Entrapment Rule: Abandonment of the Inconsistency Rule*, 11 Hamline L. Rev. 351, 366 (1988). Justices Feldman and Gordon pointed out the inverse side of that constitutional problem, that the affirmative admission requirement "relieves the prosecution of its constitutional burden of proving the elements of the case." *Soule*, 168 Ariz. at 139, 811 P.2d at 1076 (Feldman, J., dissenting).

¶37 Although there is no recognized constitutional right to an entrapment defense, forcing defendants to choose between raising the defense and forfeiting precious constitutional rights presents an unconstitutional condition. "The doctrine of unconstitutional conditions

holds that government may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government may withhold that benefit altogether." Kathleen M. Sullivan, *Unconstitutional Conditions*, 102 Harv. L. Rev. 1413, 1415 (1989). Here, Arizona offers an entrapment defense to criminal defendants, but only at the cost of surrendering the right against self-incrimination. The state is not constitutionally entitled to exact such a high cost for invoking a legitimate (indeed in many instances essential) defense.

¶38 To be sure, not every condition attached to the exercise of a benefit bestowed by government is unconstitutional.

> It is not necessary to challenge the proposition that, as a general rule, the state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose. But the power of the state in that respect is not unlimited, and one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights.

*Frost v. R.R. Comm'n*, 271 U.S. 583, 593-94 (1926). Though the doctrine is far from crystal clear or absolute, the United States Supreme Court has invalidated conditions requiring the relinquishment of constitutional rights on numerous occasions. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347 (1976) (right to political association may not be exacted as the price for holding public employment); *FCC v. League of Women Voters of California*, 468 U.S. 364 (1984) (public funding of broadcasting may not be conditioned on requirement not to editorialize). As the Court held recently in the context of a land-use permit, the unconstitutional conditions doctrine forbids the government from "pressuring someone into forfeiting a constitutional right" by "coercively withholding benefits," remarking that the "facile generalization that there is no constitutionally protected right to [the benefit] is to obscure the issue." *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2595-96 (2013).

¶39 The principle applies with great force in the criminal law context. In *United States v. Jackson*, 390 U.S. 570 (1968), the Court struck down part of a federal statute that exposed defendants in certain kidnapping cases to the death penalty unless they pled guilty or waived the

right to a jury trial. "The inevitable effect of any such provision, is of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial." *Id*. at 581. The Court held, "Whatever might be said of Congress' objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights." *Id*. at 582. After examining the government's explanations, the Court concluded that "it is clear that the selective death penalty provision . . . cannot be justified." *Id*.[2]

**¶40** Similarly, in *State v. Quinn*, 218 Ariz. 66, 178 P.3d 1190 (App. 2008), our court of appeals excluded the admission of blood samples from a driver that were taken without probable cause. The state argued that a statute required drivers to surrender their right to probable cause as a condition for driving on public roads. *Id*. at 70 ¶ 12, 178 P.3d at 1194. Citing *Frost*, the court held that "states may not condition the grant of a privilege on the forfeiture of a constitutional right." *Id*. at 73 ¶ 26, 178 P.3d at 1197.

**¶41** Does A.R.S. § 13-206(A), to use the verbiage from *Jackson*, "chill," "deter," or "discourage" the assertion of the right against self-incrimination? *See generally* 390 U.S. at 581-82. Yes, and it does even more: it requires that defendants affirmatively and (by virtue of the majority's opinion) explicitly admit they have committed the substantial elements of a crime in order to avail themselves of an entrapment defense.

**¶42** Given the centrality of the right against self-incrimination in both the Bill of Rights and our state's Declaration of Rights, *see Miranda v. Arizona*, 384 U.S. 436 (1966), it would be difficult for the State to articulate a

---

[2] *Compare Jackson*, *with Williams*, 399 U.S. at 84 ("That the defendant faces . . . a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination."). There the defendant was forced to provide notice of an alibi defense and to disclose alibi witnesses, which the Court characterized as "a limited form of pretrial discovery." *Id.* at 80. The defendant was not forced as a condition of raising the alibi defense either to testify or admit the elements of the defense, which is a far cry from the requirement at issue here. Nor is it problematic that defendants must prove, through testimony or otherwise, the affirmative defense. *See Dixon*, 548 U.S. at 5-8.

14

sufficient justification for the condition. Instead, the State's justifications are feeble: first, "the *Mathews* rule fosters perjury and more litigation," because "[t]o allow a defendant to testify as to two defenses that cannot *both* be true is equivalent to sanctioning a defendant's perjury"; and second, "allowing inconsistent defenses may confuse the jury." *Soule*, 168 Ariz. at 136, 811 P.2d at 1073.

**¶43** Those justifications repeatedly have been debunked. As the Court remarked in *Sorrells*, 287 U.S. at 451, "Objections to the defense of entrapment are also urged upon practical grounds. But considerations of mere convenience must yield to the essential demands of justice." The *Mathews* Court addressed these concerns at length:

> The Government argues that allowing a defendant to rely on inconsistent defenses will encourage perjury, lead to jury confusion, and subvert the truth-finding function of the trial. These same concerns are, however, present in the civil context, yet inconsistency is expressly allowed under the Federal Rules of Civil Procedure. We do not think that allowing inconsistency necessarily sanctions perjury. Here petitioner wished to testify that he had no intent to commit the crime, and have his attorney argue to the jury that if it concluded otherwise, then it should consider whether that intent was the result of Government inducement. The jury would have considered inconsistent defenses, but petitioner would not have necessarily testified untruthfully.

485 U.S. at 65.

**¶44** The Court went on to note that as a practical matter, it will be difficult for a defendant to establish entrapment without testifying, which will subject the defendant to cross-examination and impeachment. *Id.* Moreover, inconsistent defenses will impair a defendant's credibility, thus providing a check against raising them. *Id.* at 65-66 (citing *Demma*, 523 F.2d at 985). "While the success of a defendant in convincing a jury that he was entrapped may be reduced by his failure to testify, that is a choice that he

has a right to make free of any compulsion whatsoever. To hold otherwise would raise a serious fifth amendment question." *United States v. Annese*, 631 F.2d 1041, 1047 (1st Cir. 1980).

¶45　　　Ultimately, there is simply no reason not to entrust the entrapment defense to the jury, even where a defendant has not affirmatively and explicitly admitted guilt. *See, e.g.*, *Soule*, 168 Ariz. at 138, 811 P.2d at 1075 (Feldman, J., dissenting) ("only a jury can determine whether there is any real inconsistency"); *Morris v. State*, 779 S.W.2d 526, 528 (Ark. 1989) (Newbern, J., concurring) ("Finally, I must ask what harm it would do in these cases to permit the instruction," given that "the defense is an affirmative one, and the burden of proof is wholly on the accused . . . ."). That is especially true in a state in which the "right of trial by jury shall remain inviolate." Ariz. Const. art. 2, § 23. The State's justifications for requiring the defendant to affirmatively admit the substantial elements of the crime do not rise to the tremendous cost of surrendering precious constitutional liberties.

¶46　　　Indeed, a prior provision of § 13-206 suffered a similar infirmity. As originally enacted, the statute contained section D, which provided, "If a person raises an entrapment defense, the court shall instruct the jurors that the person has admitted the elements of the offense and that the only issue for their consideration is whether the person has proven the affirmative defense of entrapment by clear and convincing evidence." A.R.S. § 13-206(D) (1997). Our court of appeals held that § 13-206(D) "utterly eviscerated" a defendant's "constitutional right to the presumption of innocence and to a jury trial at which the jury was required to determine whether he is guilty beyond a reasonable doubt . . . ." *State v. Preston*, 197 Ariz. 461, 468 ¶ 17, 4 P.3d 1004, 1011 (App. 2000). The court acknowledged the "confusion that could result when a defendant takes the stand and admits the essential elements of an offense, yet the jury is instructed that the defendant is presumed innocent and that the state bears the burden of proof beyond a reasonable doubt on all elements of the offense," but that "is not a reason, however, to deny a defendant these fundamental, constitutional rights." *Id.* at ¶ 18. Likewise here, a decision to invoke § 13-206(A) denies defendants precious rights to a jury determination of guilt or innocence and to remain silent or otherwise avoid self-incrimination.

¶47　　　Nor does the statute as presently constructed, and as the Court construes it here, cure the unconstitutional condition. Technically,

the statute does not require the defendant to testify, allowing the admission of the substantial elements of the crime by "other evidence." Nonetheless, the Court holds that it requires a defendant to incriminate himself through an "affirmative admission." The majority says this is permissible because entrapment is an affirmative defense. But in other contexts, criminal defendants are not put to a choice between maintaining innocence and asserting an affirmative defense, and it is precisely that forced choice that comprises the unconstitutional condition.

¶48 The majority suggests that the entrapment condition is no different than a plea bargain, in which a defendant admits an offense in return for reduced charges and/or penalties. But a plea bargain is exactly that: a bargain. An offer of a plea bargain does not in most instances chill, deter, or discourage the assertion of constitutional rights, and plea bargains serve important interests of certainty, efficiency, and finality. Thus the differences between plea bargains and the condition here are of constitutional magnitude.[3] Indeed, in overturning the admission requirement for an entrapment defense in *Demma*, 523 F.2d at 986, the Ninth Circuit remarked that continued adherence to the admission requirement "would have generated serious constitutional problems by conditioning the assertion of a defense on the defendant's yielding his presumption of innocence, his right to remain silent, and his right to have the Government prove the elements of the crime beyond a reasonable doubt." *See also Commonwealth v. Tracey*, 624 N.E.2d 84, 88 (Mass. 1993).

¶49 For the foregoing reasons, in an appropriate case, I would be strongly inclined to hold that the A.R.S. § 13-206(A) affirmative admission requirement constitutes an unconstitutional condition and may not be

---

[3] Neither case cited by the majority, *see* ¶ 19, involved defendants being required to affirmatively admit elements of the crime. Rather, they involved voluntary decisions, specifically a plea bargain and a voluntary clemency interview, which only serve to underscore the mandatory nature of the requirement here. Those situations present a marked difference from being required to affirmatively admit the substantial elements of the crime. *See Corbitt,* 439 U.S. at 217 (in plea bargain context, "the pressures to forgo trial and to plead to the charge in this case are not what they were in *Jackson*"); *Ohio Adult Parole Auth.*, 523 U.S. at 288 ("this pressure to speak in the hope of improving his chance of being granted clemency does not make the interview compelled").

required to assert an entrapment defense.  For purposes of the present case, these serious constitutional concerns counsel the narrowest possible construction of a defendant's obligations in order to assert an entrapment defense.  *See, e.g.*, *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 272, 872 P.2d 668, 677 (1994) (where possible, a court should avoid interpretations that render a statute unconstitutional).

## II.

**¶50**     Unfortunately, the majority exacerbates the statute's constitutional problems by interpreting "other evidence" and "substantial elements" to prevent Gray from raising an entrapment defense even though his words, entered into evidence by the State, were essentially an admission of the crime.

**¶51**     The statute uses two crucial terms that appear pregnant with meaning yet are left undefined:  the defendant must admit the "substantial elements" of the crime by testimony or "other evidence."  What constitutes "substantial" elements rather than mere "elements" is unclear.  But I agree with the majority that whatever they are, they are set forth in the relatively straightforward language of A.R.S. § 13-3408(A)(7), which provides among other things that a person "shall not knowingly . . . sell [or] transfer . . . a narcotic drug."

**¶52**     The meaning of the term "other evidence" seems more obvious.  If it is not testimony but is evidence, then by definition it is "other evidence."  Finding this term unclear, the majority resorts to secondary methods of interpretation to determine that "other evidence" means evidence of a defendant's affirmative admission of the elements of the offense.  Although the majority is correct when it says that "[o]ther evidence is not limited to a post-charge admission," and that a post-*Miranda* admission would qualify, it fails to adequately explain why a pre-*Miranda* admission, like the one here, does not constitute other evidence.  The majority instead concludes that "[a]lthough Gray made incriminating statements in his recorded conversation, he did not affirmatively admit the substantial elements of this offense."  Precisely what magic words are required is left to future litigants and courts to hash out.

**¶53**     Clearly, the recorded statement is "other evidence."  It was offered as such by the State, objected to by defendant, and entered into evidence.  Concededly, a closer question is whether Gray's statement

18

admitted the substantial elements of the crime. The nature of the proposed transaction — to sell or transfer narcotic drugs — was clear, and knowingly agreed to by Gray. Then over the course of the journey, Gray said, "I'm a good person" and "I don't usually do this . . . ." The latter words were spoken immediately subsequent to the transaction, and in their context are an unmistakable admission to knowingly selling or transferring narcotic drugs, which are the substantial elements of the crime. By rejecting a construction of the statute that accepts the recorded statement as other evidence admitting the substantial elements of the crime, the majority plunges the statute into the abyss of unconstitutionality.

### III.

¶54     The line between effective law enforcement and entrapment can be a thin one, but it is essential for it separates the rule of law from tyranny. As such, access to the entrapment defense is important not only to those accused of crimes but to society generally. The legislature has great latitude in this area, but it cannot transgress its constitutional boundaries by conditioning a defense upon the surrender of protected liberties.

¶55     I attach myself to the views of Arkansas Supreme Court Justice Purtle, who in expressing the opinion that an affirmative admission requirement as a prerequisite to asserting an entrapment defense presents a constitutional question, remarked that "[l]aw enforcement officers ought not to be paid to go about actively encouraging people to commit crimes." *Morris*, 779 S.W.2d at 528 (Purtle, J., dissenting). Fortunately, his views ultimately prevailed when the court abolished the requirement in *Smoak v. State*, 385 S.W.3d 257, 263 (Ark. 2011). I hope our state, doctrinally committed as it is to individual liberty and constraints on excessive government power, soon will put an end to this unconstitutional condition.

¶56     In the meantime, Mr. Gray has been sentenced to over nine years in jail for accepting an undercover officer's invitation to obtain twenty dollars' worth of crack for a fee of ten dollars. Because he was not allowed to present an entrapment defense without surrendering fundamental rights, we will never know whether Gray was a cunning drug courier awaiting precisely such an opportunity, or whether he was simply waiting for a bus.

¶57     With great respect to my colleagues, I dissent.

19